# Charlestown.

### HYMAN, MOSES & CO. *et al. v.* SMITH *et al.*

#### Decided September 7, 1878.

1878
August Term.

1. A court of equity will not give a purchaser at a sale by its commissioners the benefit of his purchase, when he neglects to comply with the terms of sale within a reasonable time, if a re-sale is deemed more beneficial to the parties; or where the purchaser has complied with the terms of sale, if it clearly appears from the facts, circumstances and evidence before it, that the sale was made at a greatly inadequate price. And so the court will not compel him to take land by confirming the sale, where by the acts of parties to the suit, action on the report of sale by the court in confirming the same has been delayed for such an unreasonable time, that confirmation of the sale would most probably cause him loss, if the purchaser is not in default, or guilty of *laches* or fraud or the like, and has not acquiesced in such delay, as where it appears, that during the unreasonable time of delay the property has depreciated in value.

2. What is such unreasonable time of delay in the confirmation of the sale must of necessity depend, to some extent, upon the facts and surrounding circumstances in each case. And the Court in determining the question must exercise a sound discretion in the interest of fairness, prudence and the rights of all concerned, in view of all such facts and surrounding circumstances.

3. A case, where it is held proper by the Appellate Court to disapprove, and refuse to confirm, a sale made by commissioners under a decree of a court of equity, at the instance of the purchasers, after more than three years from the day of sale. (See opinion of the Court.)

Appeal from and *supersedeas* to a decree of the circuit court of Kanawha county, rendered on the 20th

day of December, 1877, in a cause in chancery in said court then pending, in which Hyman, Moses & Co. and others were plaintiffs, and Allen M. Smith and others were defendants, allowed on the petition of W. A. Bradford, E. A. Bennett and John S. Burdett.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree complained of.

The facts of the case are sufficiently stated in the opinion of the Court.

*William A. Quarrier*, counsel for appellants, relied on the following authorities:

Rorer on Jud. Sales §§1, 13, 124, 128; 10 Leigh 317; 28 Gratt. 710; 11 Ves. Jr. 559; 13 Ves. Jr. 517; 9 W. Va. 492; 7 Paige 412; 4 Leigh 373; 2 Ves. Jr. 336.

*T. B. Swann*, of counsel for appellees, cited the following authorities:

10 Leigh 319, 320; 11 Bush 226; 5 Mon. 451; 8 B. Mon. 105; 9 Bush 391, 392; 28 Gratt. 699; 4 Dana 186; *Id.* 438; 7 B. Mon. 62; 8 B. Mon. 104; 12 B. Mon. 472; 2 Metc. 551; 11 Bush 176; 10 B. Mon. 68; 5 B. Mon. 105; 18 B. Mon. 237; 8 Bush 298; 1 Johns. Ch. 566; 2 Johns. Ch. 441; 2 Story Eq. Jur. §776; 9 Cranch 456, 493; 9 Wheat. 528; 1 Pet. 383; 14 Pet. 172; 4 B. Mon. 263; 1 Bush 161.

*Edward B. Knight and William H. Hogeman*, of counsel for appellees, cited the following authorities:

1 Wall. 655; 10 Paige 602; 6 Gratt. 339; 2 Har. & G. (Md.) 390; 12 Ill. 523; 4 Paige 441; 4 Gill & J. 479; 28 Gratt. 711; 9 Gratt. 359; 29 Ohio 655; 5 Serg. & R. (Pa.) 225 ;Broom Leg. Max. (7th ed.) 768; 10 Leigh 317; 7 Paige 386; 4 Rand. 478; 14 Gratt. 125.

HAYMOND, JUDGE, delivered the opinion of the Court:

One branch of this case was before this Court heretofore, and is reported in 10th West Virginia R. 298. From and to the decrees, rendered in the cause by the circuit court of Kanawha county, on the 11th day of November, 1869, the 15th day of July, 1872, and the 24th day of January, 1874, Bradley, Kyle & Co., creditors of A. M. Smith, and parties to this suit, claiming to be judgment lien creditors of said Smith, obtained an appeal with *supersedeas* to this Court. The said decree of the 11th day of November, 1869, among other things, directed certain land of the defendant A. M. Smith to be sold to pay certain judgment lien creditors, &c., their debts; and appointed special commissioners, viz: Edward B. Knight and William H. Hogeman, to make the sale. This Court on the 1st day of May, 1877, decided said cause upon said appeal and *supersedeas*, and reversed a part of said decree of the 11th of November, 1869, but did not reverse that part of the same, directing the sale and appointing commissioners to make the same, but affirmed the same.

It appears from the report of said special commissioners, that on the 5th day of August, 1874, before said appeal and *supersedeas* were obtained and became operative, the said special commissioners, Knight and Hogeman, pursuant to said decree of sale, sold in front of the court house of Kanawha county at public auction to the appellants, Bennett, Burdett and Bradford, they being the highest bidders, a tract of three thousand eight hundred and eighty-one acres of land, belonging to Allen M. Smith, and lying on Cobb creek of Little Coal river, and shown on map, filed in this cause, marked "map referred to in report of commissioners of sale," at the price of $3.36 per acre, or $13,040.16 for the three thousand eight hundred and eighty-one acres; also, that the purchasers paid $2,608.03 of the purchase money in hand to said commissioners, and for the

residue executed three bonds, each in the sum of $3,477.37 with interest from the day of sale, payable in six, twelve and eighteen months, respectively from date, August 5, 1874, with Henry S. Walker as security.

It appears by the record, that on the 12th day of December, 1874, the following order was made by the circuit court of Kanawha county in this cause, viz: "Edward B. Knight and William H. Hogeman, special commissioners, tendered a report in this cause, showing, that they had sold to Edward A. Bennett, John S. Burdett and William A. Bradford a large tract of land, the property of the defendant, Allen M. Smith, and that they have in their hands the sum of $2,608.03, being the cash payment made by the purchasers at the said sale; and on motion of said commissioners the said report is ordered to be filed. And it appearing to the court, that by reason of a writ of *supersedeas*, allowed by the Supreme Court of Appeals of West Virginia, to the decree, under which the said sale was made, this court cannot now act on the said sale; and that it is proper, that the fund in the hands of the said commissioners should be preserved, and made productive, pending such *supersedeas*, it is therefore ordered, that the said commissioners do loan out the fund in their hands, as aforesaid, taking from the person or persons, to whom the same is loaned, his or their note, with good personal security, payable on the first day of the next term of this court, for the amount loaned such persons, and legal interest from the date of such loan."

It also appears, that before the date of such order of the 12th day of December, 1874, the said defendant, A. M. Smith, by his counsel, on the 25th day of November, 1874, endorsed on said report of sale exceptions thereto, as follows: "The defendant, A. M. Smith, objects and excepts to the confirmation of this report, and for the following reasons: 1. Inadequacy of price given, the property being worth $10.00 per acre, as shown by the affidavits filed in this cause. 2. Title to certain parts of

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

the three thousand eight hundred and eighty-one acres is defective as shown by the affidavit of · A. M. Smith, dated Nov. 12, 1874. 3. There is no evidence, showing how long the commissioners advertised said land. 4. The commissioners report, that it was advertised for four successive weeks. It should have been advertised thirty days at least. 5. There is a cloud on the title to a portion of the land sold by the commissioners. 6. The priorities of the judgment creditors are undetermined and unsettled. 7. Commissions on sale set aside should not be allowed; and only 2 per cent, not $2\frac{1}{2}$ per cent, on the amount over $300, is what the law allows. 8. Pending these proceedings of sale, and prior thereto, steps were being taken by certain creditors to take an appeal from decrees, rendered in this cause at preceding terms of the circuit court, which appeal has been taken and perfected.

" A. M. SMITH, <em>By Counsel.</em>"

It appears, that on the 19th day of May, 1877, the said circuit court made and entered the following order in the cause, viz: " Special commissioners, Wm. H. Hogeman, and E. B. Knight, tendered a report in this cause, which is ordered to be filed. And it appearing from the said report, that the defendant, Allen M. Smith, has been selling trees, timber and logs from the three thousand eight hundred and eight-one acre tract of land on Cobb's creek and Little Coal river, heretofore sold by said special Commissioners, under a former decree of this court, to W. A. Bradford, E. A. Bennett and J. S. Burdett, on the 5th day of August, 1874, which sale has been reported by said special Commissioners to this court, and no action yet had thereon since the sale aforesaid; and that W. L. Childers, Roman Pickens, ——— Bell, ——— Kidd, ——— Smoot and ——— Moore, as vendees of said Smith, since said sale have been · cutting and removing and are cutting and removing from said tract large quantities of oak, poplar and walnut timber, and transporting the same out of the State;

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

and that they have on hand a large quantity of oak poplar, walnut and other lumber in logs, staves or sawed lumber, on said tract and in Coal and Kanawha rivers on the way to market, which they have cut from said tract as vendees of said Smith since said sale, it is therefore adjudged, ordered and decreed, that said Allen M. Smith, Wm. L. Childers, Roman Pickens, —— Bell, —— Kidd, ——Smoot and —— Moore, and each of them, their agents and employes, be restrained, inhibited and enjoined, until the further order of the court, from selling, cutting on, or removing from, said three thousand eight hundred and eighty-one acre tract, sold by said special commissioners, Hogeman and Knight, to said Bradford, Burdett and Bennett, on the 5th day of August, 1874, any timber, logs or trees of any kind, and from removing from said tract, or out of Coal or Kanawha river, or from any other place within the jurisdiction of this court, any logs, trees, staves or lumber of any kind or description, which have been cut by said parties, or either of them, their agents or employes, on the tract of land aforesaid, since the said 5th day of August, 1874. It is further ordered that each of said parties be served with certified copies of this order of injunction."

The report of the special commissioners referred to in the foregoing order is as follows:

"*Judge of the Circuit Court of Kanawha County, West Virginia:*

" The undersigned, heretofore appointed special commissioners in the above entitled cause, now pending in your Honor's court, filed a report in December, 1874, showing, that pursuant to a decree of sale, rendered in this cause in 1869, they had made sale of a tract of land on Cobb's creek and Little Coal river, belonging to the defendant, Allen M. Smith, of three thousand eight hundred and eighty-one acres, to W. A. Bradford, E. A. Bennett and John S. Burdett, on the 5th day of August, 1874. After said sale was made, and before said report was filed, an appeal was taken by Bradley, Kyle & Co.,

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*
parties to this suit, from said decree of sale to the Supreme Court of Appeals of the State of West Virginia, where said appeal remained pending till April last, when said Court of Appeals affirmed said decree of sale upon the appeal aforesaid. By reason of said appeal the aforesaid report of sale of your commissioners has never been acted upon, but action will be asked thereon during the present term.

"Your commissioners have just been assured, and so report, that since said sale by your commissioners of said three thousand eight hundred and eighty-one acre tract to said Bradford, Bennett and Burdett, the defendant, Allen M. Smith, has sold off large quantities of trees, timber and logs from said tract, and especially oak, walnut and poplar timber, and is rapidly stripping said tract of all of its valuable timber; that Wm. L. Childers, Roman Pickens, —— Bell, —— Kidd, —— Smoot and —— Moore are some of the parties, to whom said Smith has sold and is selling timber from said tract since said sale; and that such parties, as vendees of said Smith, are now cutting down and removing from said tract large quantities of oak, walnut and poplar timber and transporting the same out of the State, and they have on hand on said tract, and in Kanawha and Coal river on the way to market, a large amount of oak, walnut and poplar and other lumber in logs, staves or round lumber, which they have cut from said tract, as such vendees of said Smith, since said sale, and all of which will be speedily removed, unless this Court interferes to prevent them. Your commissioners believe, that this conduct is an outrage upon the rights of the purchasers, who have called upon your commissioners to protect them in the premises; and they therefore report the facts to the Court for its action, and return herewith the affidavit of E. A. Bennett and W. A. Bradford, as part of this report. Respectfully submitted,

"WM. H. HOGEMAN,
"E. B. KNIGHT,
"*Special Commissioners.*"

The affidavits of E. A. Bennett and W. A. Bradford, referred to in the forgoing report, are as follows, viz:

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

"STATE OF WEST VIRGINIA,

" *County of Kanawha, to-wit* :

"E. A. Bennett this day personally appeared before me in my said county and made oath, that he is one o the purchasers of the tract of three thousand eight hundred and eighty-one acres of land on Cobb's Creek and Little Coal river, sold by W. H. Hogeman and E. B. Knight, special commissioners in the chancery cause of *Hymen, Moses & Co.* v. *Allen M. Smith, et al.*, pending in the circuit court of Kanawha county aforesaid, on the 5th day of August, 1874, at public auction, under a decree of said court rendered in said ˌcause; that said sale has been reported by said special commissioners ˈto said court in said cause, but no action has been had by said court upon said report, except to file the same, for the reason that said cause has ever since said sale been pending in the Supreme Court of Appeals, upon an appeal taken from the decree of sale rendered therein ; that said appeal was decided in April last by said Supreme Court affirming said decree of sale.

"The affiant further makes oath and says, that since the said sale the said Allen M. Smith has sold to various parties large quantities of trees, logs, lumber and timber from said tract of land ; that the parties, to whom he, the said Smith, has made sales of logs, lumber, timber and trees, from said tract of land since said sale, have actually, since said sale, cut down and removed from said tract an immense amount of poplar, walnut and oak timber, and are now cutting down and removing trom said tract large amounts of oak, poplar and walnut timber, some o which is in Coal and Kanawha rivers, and within the jurisdiction of the court, and have a large quantity of timber, cut down upon said tract, and not yet removed therefrom, partly in logs and partly in staves and sawed lumber, but which will be removed in a short time, un-

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

less prevented by court from so doing; that the following are some of the parties, to whom said Smith has sold logs, trees, timber and lumber from said tract since said sale, and who have, cut and removed, since said sale, and are now cutting and removing from said tract, large amounts of oak, walnut and poplar timber and lumber, and who now have logs, staves and sawed lumber, cut upon said tract since said sale, and not yet removed therefrom, to-wit Wm. L. Childers, Roman Pickens, —— Bell, —— Kidd, —— Smoot and —— Moore.

"Given under my hand this 18th day of May, 1877.

"E. B. KNIGHT,
"*Notary Public for Kanawha County, West Va.*"

"STATE OF WEST VIRGINIA,
"*County of Kanawha, to-wit*:

"W. A. Bradford this day personally appeared before me in my said county and made oath, that he is also one of the purchasers of the said three thousand eight hundred and eighty-one acre tract of land, mentioned in the foregoing affidavit of E. A. Bennett at the sale made by special commissioners, Hogeman and Knight, as set out in said affidavit; that he has just heard the said affidavit of E. A Bennett read, and has recently been · upon the tract of land aforesaid, and is personally cognizant of the matters, stated in said affidavit, and that said affidavit is true as he verily believes.

"Given under my hand this 18th day of May, 1877.

"E. B. KNIGHT,
"*Notary Public for Kanawha County, W. Va.*"

Afterwards the said circuit court made the following decree or order in the cause, viz:

"And at another day, to-wit: At a circuit court held, as aforesaid, the 2d day of June, 1877, on motion of the defendants to the injunction awarded in this cause during the present term, said injunction is so far dissolved, as to permit said defendants to dispose of the logs, timber, staves and lumber, which have been cut upon

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

the three thousand eight hundred and eighty-one acres of land, in the injunction order mentioned, since the sale to Bennett, Bradford and Burdett, reported in this cause, upon the said defendant paying to W. H. Hogeman and E. B. Knight, who are hereby appointed receivers for the purpose, the value of such logs, timber, staves and lumber before the same was cut from the land, and such payment is to be made, before said defendants are to be allowed to remove or dispose of any of said logs, timber staves and lumber; and the said injunction order, except as above modified, is to remain in full force and effect till the further order of the court; and said Hogeman and Knight are required to give bond, as such receivers, before the clerk of this court in the penalty of $1,000.00 with good security, conditioned as required by law."

And afterwards, at rules held in the clerk's office of the circuit court of Kanawha county, for the month of November, 1877, came the administrators of Allen M. Smith, decease 1, by their attorney, and filed their demurrer and answer to the petition of Bennett, Burdett and Bradford, heretofore filed in this cause.

It appears, that on the 8th day of November, 1877, it was suggested upon the record, that since the last term of the said circuit court, the defendant, Allen M. Smith, died intestate, and the cause was revived in the name of the administrators, widow and heirs of the said Allen M. Smith, deceased.

Afterwards, on the 3d day of December, 1877, by an order of court, then made, it appears, that Hogeman and Knight, theretofore appointed receivers in this cause, this day tendered their report, number one, as such receivers, which report is ordered to be filed. The report referred to in the last named order, is as follows, viz:

*Judge of the Circuit Court of Kanawha county, West Virginia:*

"The undersigned, heretofore appointed receivers in this case, to collect and receive from the parties cutting logs

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

and staves, &c., on the land sold to Bennett, Bradford and Burdett, the fair value of said logs, staves, &c., before the same were cut, beg leave to report, that they have ascertained, that R. Pickens and W. L. Childers have cut upon the tract of land purchased by E. A. Bennett, John S. Burdett and W. A. Bradford, as heretofore reported to the court, since said sale was made, one hundred and eighty-four thousand nine hundred and eighty-five staves, under a contract they, the said Pickens and Childers, made with A. M. Smith since said sale, by which contract the said Pickens and Childers were to pay said Smith $2.50 per thousand, and are willing to pay the same price now to the commissioners of the court, before said staves are removed. Your commissioners have also ascertained, that D. C. Smoot, or parties acting under him, have cut on said tract of land since the 18th day of August, 1876, walnut logs measuring about nine thousand seven hundred and sixty-eight cubic feet, and that by a contract, made between said Smoot and said Smith, the said Smoot was to pay six cents per cubic foot for said logs. Your commissioners are informed and so report, that the prices aforesaid are good fair prices for staves and walnut logs in that locality. The walnut logs are still on the premises, and commissioners have warned the parties not to remove the same, till paid for. Your commissioners are informed, that said Smoot paid said Smith $100.00 on said contract, and that said Smith used the larger part, if not the whole, of said sum so paid him, in paying taxes, assessed on said tract since said sale to said Bennett, Burdett and Bradford; and the said Smoot has also, as your commissioners are informed, been compelled to pay the taxes on said tract for the year 1876, to prevent said logs being sold by the sheriff for the year 1876 under a levy or distress made on said logs for said taxes; but your commissioners are not at present advised of the amount of taxes so paid by said Smoot. All of which is respectfully submitted.

"WM. H. HOGEMAN, } Receivers."
"E. B. KNIGHT,

Afterwards, and on the 20th day of December; 1877, the said circuit court made and entered this decree in the cause:

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

"This cause came on to-day to be heard on all papers formerly filed, and proceedings formerly had therein, including the mandate of the Supreme Court of Appeals, and especially on the report of commissioners William H. Hogeman and Edward B. Knight, heretofore filed herein, showing, that on the 5th day of August, 1874, they sold, pursuant to the decree entered in this cause, to William A. Bradford, Edward A. Bennett and John S. Burdett a tract of three thousand eight hundred and eighty-one acres as the property of Allen M. Smith, deceased, described in said report, at the price of $3.36 per acre, or $13,040.16 for said tract, and on the exceptions, endorsed on said report in behalf of Allen M. Smith, which exceptions are now formally withdrawn by the administrators and heirs of said Smith, and on the exception, endorsed on the said report by the purchasers, Bradford, Bennett and Burdett, and the petition of said purchasers referred to in said exceptions, and the demurrer and answer to said petition filed by the administrators of Allen M. Smith, deceased, to which answer the petitioners replied generally, and on the report of commissioners Hogeman and Knight, relating to the timber &c. cut from the property so sold as aforesaid, which was filed at this term, also on the report of said commissioners, filed at the May term, 1877, and on the affidavit of Edward A. Bennett and William A. Bradford referred to in said last named report, and the order made thereon; and was argued by counsel. Upon consideration whereof, the court is of opinion to, and doth accordingly, overrule the exceptions of the purchasers, Bradford, Bennett and Burdett, to the confirmation of the sale made to them as aforesaid, and doth dismiss the petition of said purchasers at their costs. It is therefore adjudged, ordered and decreed, that the sale made by commissioners William H. Hogeman and Edward B. Knight to William A.

1878
August Term.

Hyman, Moses
& Co. *et al.*.
v.
Smith *et al.*

Bradford, Edward A. Bennett and John S. Burdett as aforesaid, and the report of the commissioners in respect thereto, be and the same is hereby approved and confirmed. And it appearing from the record of this suit, that the commissioners, pursuant to decrees herein, did loan out to William A. Bradford, Edward A. Bennett and John S. Burdett, the cash payment of $2,608.03 realized on the sale aforesaid, and that they hold the note of said Bradford, Bennett and Burdett, with William T. Burdett as their security, for the amount loaned as aforesaid, with interest; and it appearing also, that the whole amount of the deferred payments on said purchase is due and unpaid, it is adjudged, ordered and decreed, that commissioners Hogeman and Knight do proceed to collect the amount loaned out as aforesaid, and the amount of the deferred payments aforesaid, with interest thereon; and the creditors, interested in the purchase money aforesaid, and the administrators and heirs of Allen M. Smith, waiving their right to interest on the entire purchase money aforesaid from the date of sale up to and including the last term of this court, when the confirmation of the sale aforesaid was first resisted by the said purchasers, it is further adjudged, ordered and decreed, that the commissioners shall only collect interest on the said purchase money, including the amount loaned as aforesaid, from the 2d day of June, 1877, which was the last day of the last term of this court, until paid. It is further adjudged, ordered and decreed, that when the commissioners aforesaid shall have collected the entire amount of the purchase money, and interest as aforesaid, including the amount loaned as aforesaid, they shall, as special commissioners, make, execute and acknowledge and deliver to the purchasers an apt and proper deed, with covenant of special warranty, conveying to them the property aforesaid free and discharged of and from the claims of all other parties to this suit; and for making such deed the commissioners shall be entitled to $10.00, to be taxed in the costs of this suit. And it is also adjudged,

ordered and decreed, that the commissioners, as they make collections under this decree, do proceed to distribute the funds, coming into their hands, in payment of costs, that have accumulated in this cause, including all commissioners' costs and expenses of sale, and after paying such costs, that they proceed to pay off, as far as may be, the liens established in this cause in the order of their respective priority. The court reserves for further consideration the question respecting the party liable for taxes, paid by Allen M. Smith since the sale aforesaid was made. Before receiving any money under this decree the commissioners shall execute before the clerk of this court bond, with good security, in the penalty of $10,000.00, conditioned according to law.

1878
August Term.

Hyman, Meses
& Co. et al.
v.
Smith et al.

The petition of the said purchasers, Bradford, Bennett and Burdett, referred to in the decree last above, is as follows, viz :

"*To the Hon. Joseph Smith, Judge of this court* :

Your petitions respectfully represent, that at a judicial sale, had in the above entitled cause on the 5th day of August, 1874, they became the purchasers of a tract of three thousand eight hundred and eighty-one acres of land, the property of Allen M. Smith, for the price of $13,040.16 ; that they paid the cash installment of $2,608.03; and that they executed their three bonds, with Henry S. Walker as security, each for the sum of $3,477.37, with interest from date, payable respectively in six, twelve and eighteen months. Shortly after the sale the case was taken to the Court of Appeals by one of the creditors of the said Allen M. Smith, and has been recently decided, and the cause remanded back to this court for further proceedings. The sale has never been confirmed, and, as your petitioners allege, it would be inequitable, unjust and oppressive now to confirm the same for the following reasons :

"1st. Because since the sale your petitioners have ascertained from the former owner of the land, the defendant Smith, that the title of two hundred and fifty acres, a

1878
Augnst Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

portion of the land sold to them as aforesaid, is defective and bad. See the affidavit of Allen M. Smith, filed in this cause, in connection with his exceptions to the commissioners' report, and now made part of this petition, and marked exhibit "A."

"2d. Your petitioners purchased the property for the purpose of speculation and re-sale. They have been deprived of the possession of the same for almost three years, and have thus been prevented from offering the same to purchasers. In the meantime there has been a steady shrinkage in the value of real estate in the United States and particularly in the Kanawha valley. Meanwhile the interest, some seventeen per cent., on the purchase money has accrued, and all of the deferred installments have matured and become due, while your petitioners have been deprived of the possession and the title to the property.

"3d. During the period, that has elapsed since the sale, the defendant, Smith, has been busily engaged in despoiling the land, sold to your petitioners as aforesaid, partly by himself directly and partly through others; among others W. L. Childers, and Roman Pickens have cut two hundred and nine thousand nine hundred and thirty-six tight barrel staves; one —— Kidd, by the same authority, has cut one thousand walnut logs; one —— Bell has cut and shipped one barge load of poplar plank containing two hundred thousand feet, besides parts of three or four other barges laden with poplar plank, quantity unknown. By like authority the said Childers has cut seventy thousand tight barrel staves. The defendant, Smith, as your petitioners believe and charge, has cut some four hundred thousand tight barrel staves from said land.

"4th. Your petitioners have been informed by the defendant, Smith, that he has sold all the oak and walnut timber now remaining on the land, with permission to the purchasers to remove the same; in fact he exhibited the written contract for the oak timber to your petitioners.

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

They are informed and charge, that the *lis penden* of this suit has never been recorded, and that the judgments, which this suit was brought to enforce, have never been duly and legally docketed; and they are advised, that these contracts so made by the defendant, Smith, present a serious impediment to their enjoyment of the property, so purchased by them as aforesaid. Your petitioners also allege, that the chief value of said tract of land, and the chief inducement to them to purchase the same, was the timber situate upon the said tract at the time of the sale.

"Your petitioners are advised, that the difficulty about the confirmation of the sale was occasioned by the failure on the part of the creditors of the said Smith to prepare and enter proper decrees in this cause; and that the destruction of the timber, as herein detailed, and the contracts for the future removal of the timber were made by the defendant Smith himself; and, that therefore neither the creditors of the said Smith, nor the said Smith himself, are in position to insist on the confirmation of said sale. Your petitioners, therefore, pray, that they may be made parties defendant to this suit; that the sale aforesaid be vacated and set aside; that their bonds may be cancelled and delivered up; that the cash instalment heretofore paid by them may be returned, with interest. And they will ever pray, &c.

"W. A. BRADFORD,
"E. A. BENNETT,
"JNO. S. BURDETT,
*"By Counsel."*

The said petition is verified by the affidavits of said Bradford, Bennett and Burdett. The following is the affidavit of said Allen M. Smith, referred to in his exceptions, as I infer, and also referred to in said petition of said Bradford, Bennett and Burdett, as exhibit (A), viz:

" STATE OF WEST VIRGINIA,
" *Kanawha County, ss.:*

" Allen M. Smith this day made oath before the undersigned, that on the 3d day of August, 1864, he came to

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

Charleston, and found his land being offered for sale by public auction under the direction of Hogeman and Knight, commissioners; that at the solicitation of Wm. S. Burdett, son of John S. Burdett, this affiant and John S. Burdett had a conference in relation to the said lands; that said J. S. Burdett then offered to withdraw his bid, and said, that he did not know the land belonged to affiant, otherwise he would not have bid for the said property, and stated to affiant, that if the land belonged to him (Burdett), he would not take $10 per acre for it, and and that the court would not confirm a sale at any such price, as that he (Burdett) was bidding for the land, to-wit, $3.00 per acre. He further stated to affiant, that the interest of affiant should in nowise be injured by his (Burdett's) bidding, and professed great friendship for affiant; that $3.00 per acre was the limit of his bidding, and he knew, the court would not confirm a sale at $3.00 per acre.

" Affiant further states, that John S. Burdett was the highest bidder on said 3d of August; and that the affiant left Charleston under the impression, from the conference aforesaid with John S. Burdett, and the stringency of the money market, that no sale of the property would take place.

" Affiant further states, that a few days after August 3d he again came to town, and saw John S. Burdett about the sale of the property. Affiant then expressed his surprise to Burdett that a sale had taken place, and that Burdett had become the purchaser. Burdett then apologized to affiant, and tried to excuse himself, on the ground that other parties (Bradford and Bennett) had become associated with him in the purchase of the property, and that he (Burdett) had been unable to make good his promise to affiant.

" Affiant on the same day called also on W. A. Bradford and Edward A. Bennett, and notified each and all of the purchasers, that he would object and protest against the confirmation of the sale, made under such circumstances.

"Affiant further states, that the title to certain parts of

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

the land, sold by commissioners Hogeman and Knight, is defective; that Jones is claiming about one hundred acres, situated on the head of Grassy Fork of Cobb's creek, upon which he has built a house, and is living therein; that Valentine Kissinger is claiming about one hundred acres of the surface interest, situated on the head waters of Cobb's creek and Lick branch; that the heirs of Bung Pauley are claiming about fifty acres, situated on the waters of the Lick branch; which adverse claimants are in possession of their respective claims, and are living on the same, and the said claims lie within the boundary of the three thousand eight hundred and eighty-one acres of land, sold by said commissioners on the 3d of August, 1874.

" A. M. SMITH."

".Subscribed and sworn to before me, a notary public in and for said county, this 12th November, 1874.

" J. T. BRODT,
" *Notary Public.*"

The following is the demurrer and answer of the administrators of Allen M. Smith to the said petition of the purchasers, Bradford, Burdett and Bennett, viz:

"The administrators of A. M. Smith demur to the petition, filed in the cause by W. A. Bradford and others, purchasers of land at commissioners' sales, for want of equity; and not waiving ——, answer and say, that in order to pay the taxes on the lands, purchased by the petitioners, and save the same from delinquency and forfeiture to the State for non-payment of taxes, their intestate did contract and sell timber from said lands. What timber was sold from said lands by said A. M. Smith, was sold to W. L. Childers and R. Pickens for tight barrel stuff at $2.50 a thousand in the stump, from two to five miles from the river. They held the money for same, and still hold it, subject to order of court. He had to, and did, pay several hundred dollars taxes on this land, while the case was in the Court of Appeals.

1878
August Term.

Hyman, Moses
& Co  et al.
v.
Smith et al.

Kidd & Co. purchased some walnut logs standing at six cents. They only paid Smith $100.00 on the walnut. At the time this petition was filed, Kidd & Co. had not removed any timber from the land, and Childers and Pickens had not removed much. After the petition was filed, the commissioners of the Court took it in hand, and Kidd & Co. and C. and P. are accounting to them for the proceeds of the timber. It will be subject to the order of the Court; and the timber was well sold. If petitioners are entitled to the proceeds, they will get every dollar of it. The commissioners of Court will report the facts about the sale of timber. It was difficult for A. M. Smith to pay the taxes; and they ask, that they be charged against the purchasers. They are herewith filed, marked in an envelope "X," made a part of this *petition.* The title to the entire tract of land is perfect. It was a mutual misfortune, and nowise the fault of A. M. Smith, that the confirmation of the sale was delayed by appeal. Petitioners took all such chances, when they purchased the land. It is true, lands have shrunk in value since the purchase, or this petition would hardly be filed. If the land had risen in value, purchasers would not complain. The purchasers were not disposed to pay the taxes; and no better sale could be made of the timber.

"A. A. ROCK,
"W. L. CHILDERS,
"J. A. SMITH,
"As Adm'rs of A. M. Smith,
"By Counsel."

The foregoing answer does not appear to have been sworn to by any person.

The exceptions of the purchasers, Bradford, Bennett, and Burdett, to the said report of sale of said special commissioners appear to have been filed on the 25th day of May, 1877; and the grounds of said exceptions are stated in their said petition, which I infer, was filed

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

at the date their exceptions were filed. The exception so states and refers to the petition.

There is an affidavit in the cause of W. L. Childers, dated November, 12, 1874, in which said Childers states on oath, that he is well acquainted with the land sold in August, 1874, by Messrs. Hogeman and Knight, as commissioners, which is situated on the waters of Little Coal river, and that in his opinion the said land is worth $10.00 per acre; that land of like character, as to coal, timber and location, on Little Coal river was purchased by James M. Gray of the Dunlaps at $10.00 per acre. This affidavit seems to have been made by the said Childers, at the same time said Allen M. Smith made his affidavit aforesaid, and was sworn to before the same officer. And I pursume, that it is one of the affidavits referred to in the exceptions of said Allen M. Smith to the said report of sale of special commissioners, Knight and Hogeman.

The foregoing embraces all the facts, orders, decrees and evidence appearing in the record, bearing on the propriety or impropriety of the circuit court overruling the exceptions of the purchasers of the said land to the said report of sale of the special commissioners, Knight and Hogeman, and confirming the sale, &c.

From and to the said decree of the circuit court of the county of Kanawha, rendered in this cause on the 20th day of December, 1877, the said purchasers William A. Bradford, Edward A. Bennett and John S. Burdett, have obtained from this Court an appeal with *supersedeas*; and it is now for us, in reviewing the cause, to ascertain and determine, whether there is error in the said decree, prejudicial to said purchasers, for which the same should be reversed.

The appellants, in their petition for the appeal and *supersedeas*, assign the following errors in said decree, to which the appeal and *supersedeas* has been awarded, viz:

"1. The bidding was had on the 5th day of August,

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

1874 ; it was reported to the court on the 12th of De-
cember, 1874, but the confirmation of the sale was de-
layed until the 20th of December, 1877, a period of more
than three years, not from any fault of petitioners, but
from defective decrees entered by the court. (See decree
of 12th December, 1874.)

"2. During all this period petitioners have had no
possession or control of the land. The land has greatly
depreciated in value ; the object for which they purchased
the land has lapsed.

"3. It has been ascertained since the bidding, that the
title to a portion of the land is defective. (See excep-
tions to commissioner's report.)

"4. The land is chiefly valuable for its timber.
Since the bidding the land has been denuded of its tim-
ber, and at a period when petitioners had no right to in-
terfere, the sale not having been confirmed. The court
therefore erred in overruling the exceptions to the report,
in confirming the sale, and in ordering the collection of
the purchase money. The court should have set aside
the sale, or at least ordered an account to ascertain the
extent of depreciation, the quantity of land held by good
title adversely to the proposers, the extent of the tres-
pass upon the timber, and then abated the purchase
money. It was manifestly unjust and inequitable, to
throw the entire loss and depreciation upon petitioners,
who had been guilty of no laches or default."

As the 1st. 2d and 4th, assignments of error have
some bearing upon each other, they will for the
sake of brevity be considered together, so far as deemed
material to the main, and in fact the only question in-
volved in this appeal, viz: Did the court err in over-
ruling the exceptions of the appellants, filed to the re-
port of sale of commissioners, Knight and Hogeman?

In considering these assignments of error I think it
advisable, to first recur to authorities and judicial de-
cisions, bearing upon the subject of judicial sales, so far
as they bear upon the questions, involved and presented
by the record and said assignments of error.

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

Rorer on Judicial Sales, at pages 1 and 2, §1, says: "As a judicial act is one supposed to be clearly *pendente lite* of some sort or other, so a judicial sale is, in contemplation of law, a sale made *pendente lite*: a sale in court, and the court is the vendor. It matters not to the contrary, that it is made through the instrumentality of a master, commissioner, or other functionary appointed thereto by the court; it is not valid or binding, and confers no right to the property sought to be sold, until confirmed by the court. By such confirmation it is judicially made the act of the court, and is therefore a judicial sale. The master, or commissioner, in conducting it acts by authority of, and as the instrument or agent of, the court."

Again, at page 7 §12, he says: "In a legal sense the sale is made by the court itself in enforcement of its own orders and decrees, wherein is described the property to be sold. The person, who conducts the same, is merely the instrument, or means, used by the court to bring about such executory agreement as the court chooses, if satisfied therewith, by final act of confirmation, which makes the court the vendor. Such sale is unlike a sheriff's sale on ordinary common law, or statutory execution, which is *ministerial*, and not a *judicial* act; and in making which the law regards the officer, and not the court, as the vendor."

Mr. Rorer also, at page 9, §13, says: "When an acceptable bidder is found, and agreement as to terms is attained, then the report thereof is made to the Court; and the Court confirms it, or not, at discretion. Before such confirmation the purchase is so incomplete, that a loss by fire falls on the vendor or owner, though it occur after the acceptance of the bidding and after the report of sale."

He further says, at pages 55 and 56, §§122 and 124: "Confirmation is the judicial sanction of the court. Until then the bargain is incomplete. When made, it relates back to the time of sale, and 'supplies all de-

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

fects,' except those so founded in jurisdiction or in fraud. Until confirmed by the court, the sale confers no right. Until then, it is a sale only in a popular, and not in a judicial or legal sense. The Chancellor has a broad discretion in the approval or disapproval of such sales. 'The accepted bidder,' (says the Supreme Court of Kentucky) 'acquires by the mere acceptance of his bid no independent right as in the case of a purchaser under execution, to have his purchase completed;' but is merely a preferred proposer, until confirmation of the sale by the court, as agreed to by its 'ministerial agent.'

"In the exercise of this discretion a proper regard is had to the intent of the parties and the stability of judicial sales. By sanctioning the sale the courts make it their own."

There is a difference between such sales, and ordinary auction sales, and sales by private agreement. In the latter says Daniel in his Chancery Practice : "The contract is complete, when the agreement is signed ; but a different rule prevails in sales before a master. In such cases the purchaser is not considered as entitled to the benefit of his contract, till the master's report of the purchaser's bidding is absolutely confirmed." Such is the rule whether the sale be by a master, commissioner, or other person or functionary authorized by the court to conduct the sale. The bargain is not ordinarily considered as complete, until the sale is confirmed, and the conveyance made.

Again, at page 57, §128: " The matter of confirmation rests so peculiarly upon the wise discretion of the court, in view of all the surrounding facts and circumstances, to be exercised in the interest of fairness, prudence and the right of all concerned, that it is difficult to come at an absolute legal rule on the subject, other than that of a sound legal discretion. Any mistake or misunderstanding between the persons conducting the sale and intended bidders, or parties in interest, and any accident, fraud or other circumstances, by which

1878
August Term.

Hyman, Moses
& Co. *et al,*
v.
Smith *et al.*

interests are prejudiced, without the fault of the original party or parties, or by reason whereof property is sold at an under price, considerably disproportioned to its real value, will be deemed sufficient cause for refusing confirmation, and for ordering a re-sale. And so generally whatever, and even less, is sufficient to set a sale aside after its consummation will of course, upon the same principle, if known, cause confirmation to be denied."

In the case of *Taylor* v. *Cooper*, 10 Leigh 317, Judge Tucker, who delivered the opinion of the court, at pages 318 and 319, says: " I have had not the slighest doubt of the right of Cooper, the purchaser, to the rent in question. The principles of the court, according to the English practice, I take to be clearly these :

1. When there is a sale by the master, and the property appreciates by the accidental falling in of lives or other means, the court will only confirm the sale upon the terms of the purchasers making compensation, *Dary* v. *Barler*, 2 Atk. 490; *Blount* v. *Blount,* 3 Atk. 638, and in doing this, it but acts within the scope of its rights and powers; for the sale is not conclusive, until confirmed ; and justice to the owner of the estate demands, that when there has been a material appreciation before confirmation, a re-sale should be directed, unless the purchaser will make compensation.

2. When after the sale and before confirmation (as in the cases of *Ex parte Miner*, 11 Ves. Jr. 559, and *Heywood* v. *Covington's heirs,* 4 Leigh 373) the property is destroyed, or materially injured, by flood or fire, the loss must fall on the vendor ; for as, in the case of appreciation, the vendor will be charged with compensation, so, in the case of depreciation, by destruction of part of the estate, he has a fair claim to deduction. Until the sale is confirmed, he is considered in *England* as having no fixed interest in the subject of purchase. 11 Ves. 559. Before it is confirmed, he is always liable then to have the biddings opened ; and therefore *non constat,* that he

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

is a purchaser. *Anon.*, 2 Ves. Jr. 332. In case of loss, he is therefore allowed a deduction. The practice with us has gradually departed from that of the English courts in some respects, which it is not necessary here to set forth.

3. But thirdly, when the sale is confirmed, that is, when both contracting parties (the purchaser and the court) concur in ratifying the inchoate purchase, the confirmation relates back to the sale, and the purchaser is entitled to everything, he could have been entitled to, if confirmation and conveyance of title had been contemporaneous with the sale."

See also *Attorney-General* v. *Day*, 1 Ves. 218; *Trugg* v. *Fifield*, 13 Ves., Jr., 517.

This Court held in the case of *Kable* v. *Mitchell et al.*, 9 W. Va., 492, that in sales made by commissioners under decree and orders of a court of equity, the purchasers who have bid off the property, and paid their deposits in good faith, are considered as having inchoate rights, which entitle them to a hearing upon the question, whether the sale shall be set aside. And if the court errs by setting aside the sale improperly, they have the right to carry the question by appeal to a higher tribunal; that a sale by a commissioner, made under a decree of a court of equity, is not an absolute sale in the State of West Virginia, and does not become absolute, until it is confirmed by the court; that the court may, in the exercise of a sound discretion, either affirm or set aside the sale, when from the facts, evidences and circumstances before it, it appears clearly, that the sale was made at a greatly inadequate price; and the court may solve the question upon affidavits or depositions in connection with the fact, that a greatly larger price is offered to the court for the land, and secured or offered to be secured; or it may set the sale aside upon any evidence, or fact, or facts before it, which clearly shows, that the land sold at a greatly inadequate price. That there is no inflexible rule in this

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

State, fixing any specific amount of per cent, required to be offered in advance of the last bid made at the sale, to authorize the court to set aside the sale; the amount of per cent, that should be required in such case, must, to a very great extent, depend upon the amount of the last bid, and the circumstances of the case. Each case should be determined according to its merits. The offering to the court a large amount in advance of the price bid, to be secured, either by paying the amount offered into court, or by giving bond with good security, is generally the very best evidence of the great inadequacy of price bid at the sale. That the bid made by the purchaser must be considered as his offer to the court through its commissioner; and in making it, he agrees to be bound thereby, if it is accepted and approved by the court; and it is discretionary with the court, whether it will accept the bid and confirm the sale or set it aside.

But this discretion is not an arbitrary one, it shall be correctly exercised, and is liable to review by an Appellate Court in a proper case. That the discretion, which the court may exercise in such cases, will not authorize it to set aside the sale without sufficient cause; and greatly inadequate price is, among other things. a sufficient cause; and that when the circuit court has disapproved and set aside such sale, made by its own commissioners, the Appellate Court should not disturb the action of the circuit court, unless it plainly appears, that there is error to the prejudice of the appellant.

In this case the court declined to confirm the sale, and directed the property to be re-offered; and the purchaser appealed.

In the case of *Jackson et ux.* v. *Edwards et al.*, 7 Paige 386, it was held, that "the court will not give a purchaser at a master's sale the benefit of his purchase, when he neglects to comply with the terms of sale within a reasonable time, if a re-sale is deemed more beneficial to the parties. So the court will not compel him to take

97

the title, when by the fault of the parties, the completion of the sale has been delayed so long, that he cannot have the benefit of his purchase substantially, as if the sale had been completed at the time contemplated by the terms of sale."

In this case Chancellor Walworth in delivering the opinion of the court said: " As this court will not give a purchaser at a master's sale the benefit of his purchase, when he has neglected to comply with the terms of sale within a reasonable time, if a re-sale of the property is deemed more beneficial to the parties interested in the proceeds of the sale ; so neither will it compel him to take the title, when by the fault of the parties, thus intended, and without any captious objections to the title on his part, the completion of the sale has been delayed so long, that he cannot have the benefit of his purchase substantially, as if the sale had been completed and the title given at the time contemplated by the terms of sale. In this case there was a valid objection to the title, which was not removed until a long time after the sale ; and no attempt was made to remove it, until the property had depreciated in value, so that the purchasers must now be great losers, if they are compelled to take the property at the price, for which it was sold. The effect of compelling purchasers to take a title upon a master's sale, under such circumstances, must necessarily tend to deter bidders from attending and purchasing property under the decrees of this court. The several orders appealed from are therefore right ; not for the reason, that it is now impossible to make a good title, but because the purchasers ought not to be required to take even a good title after such a delay, as had occurred at the time these orders were made, when the purchasers could not have the substantial benefit of their respective purchases."

In this case, it seems, the sales were made in 1837 as and for good titles. The purchasers objected to the title, which they would acquire under the master's deed

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

and upon application to the court to compel them to complete their purchase in April, 1837, it was referred to the master to examine the objections of the purchasers to the title, as the same might be conveyed to them under the proceedings in the cause, or otherwise, and to report thereon; pending the reference, and about ten months after the sale, the counsel of the complainants obtained from Mrs. Edwards, under an order of the court requiring her to execute the same, deeds of appointment in favor of the purchasers, which obviated the objection as to certain contingent interests. And in January, 1838, the master reported, that the purchasers would obtain a good title to the lots, purchased by them respectively, under the master's deed in connection with these additional deeds of appointment, executed by Mrs. Edwards. The purchasers objected to the master taking into consideration the deeds of Mrs. Edwards, in deciding upon the validity of the title, and offered to prove before him, that the premises had greatly depreciated in value subsequent to the sale, and before these deeds from Mrs. Edwards were obtained; but the master overruled the objection and offer, on the ground that the matters thereof were not embraced in the order of reference. The purchasers excepted to the report, not only on the ground of the last objection, but also on the ground that they would not obtain a good title under the master's sale, even in connection with the deeds of appointment of Mrs. Edwards. The exceptions were argued before the Vice Chancellor, in connection with the motion to compel the purchasers to complete their purchases. In opposition to which motion an affidavit of one of the purchasers was read, stating that the lots could have been sold within about three months after the sale at an advance, if a good title could then have been given to the purchasers; but that subsequent to the order of reference, and before the order requiring Mrs. Edwards to make the additional conveyances was obtained, the property had depreciated in value about

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

twenty-five per cent, whereby the purchasers would be great losers, if they were then compelled to take the title.

The Vice Chancellor decided, that the title to the premises would be perfect under the master's deeds and the additional deeds of Mrs. Edwards, except as to the inchoate rights of dower of Maria Jackson, one of the complainants, and of the infant wife of David S. Jackson, one of the defendants; but that their rights to demur in the premises, in case they survived their husbands, could not be barred by a sale under a decree in partition, to which they were parties. He therefore refused to compel the purchasers to complete their purchases. This decree was appealed from; and Chancellor Walworth affirmed the decree of the Vice Chancellor, not for the reasons assigned by the Vice Chancellor, but for the reasons stated in that part of his opinion above quoted.

In the case of *Threlkelds* v. *Campbell*, 2 Gratt. 198, it was held, that a purchaser of land at a judicial sale can only obtain relief for defects in the title, or incumbrances on the property, by resisting the confirmation of the sale by the court, upon the return of the commissioners, report. And it is not competent for a court of equity, to enjoin a judgment, obtained against him for the purchase money, on the ground of defect of title to the property at the time of the purchase. *Young's adm'r et al.* v. *McClung et al.*, 9 Gratt. 336, 358; *Daniel et al.* v. *Leitch*, 13 Gratt. 195, 212, 213.

But in the case of *Watson* v. *Hoy et al.*, 28 Gratt. 698, it was held, that "though it is true, that in Virginia it would seem to be the general rule, that objections by purchasers to judicial sales *for defect of title* must be made, before the sale is confirmed by the court, and that objections afterwards came too late, yet the rule does not apply to the equity of a purchaser, arising from after-discovered mistake, fraud or other like matter. And there having been a mutual mistake, as to the quantity

of land in the tract, W. is not precluded by the confirmation of the sale from obtaining relief." In this case Judge Burks in delivering the opinion of the court, at page 711, says; "Courts of equity are always ready to relieve innocent, injured parties in such cases, unless by reason of acquiescence, laches or other special circumstances."

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

As before stated, the decree of sale in the case at bar was rendered on the 11th day of November, 1869; the sale of the land was not made by the special commissioners until the 5th day of August, 1874, nearly five years after the date of said decree of sale.

At the time the appellants purchased the land, the time, within which an appeal could be lawfully taken from the decree of sale, was within three months of being expired; and for this reason there was some ground at least for bidders at the sale to regard it as probable, though not certain, that no appeal with *supersedeas* would be asked or taken from the decree of sale. But very soon after the sale was made, a part of the judgment lien creditors of said Smith, who were parties to the suit, applied for and obtained from this court an appeal and *supersedeas* from and to said decree of sale, and other orders made in said cause. And on the 25th day of November, 1874, said Smith, then owner of the land which was decreed to be sold to pay his debts, being dissatisfied with the sale, filed written exceptions to the same, one of which was, that the land sold for an inadequate price, that it was worth at the sale $10.00 per acre; and another, that the title to certain parts of the tract of land sold was defective, and that there was a cloud on the title of a part of the land sold, and in support of these exceptions filed his affidavit and that of W. L. Childers, which are dated the 12th day of November, 1874, respectively, and have hereinbefore been referred to.

The report of sale was presented to the circuit court on the 12th day of December, 1874; and the court then and there, as stated in its order of that date, determined,

1878
August Term.

Hyman, Moses
& Co *et al.*
v.
Smith *et al.*

that it could not then act on said sale, because of the writ of *supersedeas* allowed in the cause by this court. At this date the appellants made no objections to the sale, and had not filed any exceptions thereto, so far as appears by the record.

As before stated, this court rendered its decision in the cause on the 1st day of May, 1877, at Wheeling; and on the 25th day of the same month and year the appellants filed their said exceptions to said sale, and their said petition, sworn to, to the court to set aside said report of sale, and the sale therein reported. It appears, and in fact is admitted, in effect, that between the time the land was so sold, and the decision of the cause by this court and the filing of said petition, the land had depreciated greatly in value, and was not worth by a large amount, what it was, when sold; that during the whole time the land, or nearly all of it remained in the possession and use of said Smith, and those claiming under him; and that said Smith by his vendees under him had cut, destroyed and converted a considerable amount of saleable growing timber upon said land, to the great injury of said land in value, which fact was reported to the court by said special commissioners, supported by affidavits; and the court by its order of the 19th day of May, 1877, made the order of injunction in the cause hereinbefore referred to.

It further appears, that some time after the death of said Smith, and on the 20th day of May, 1877, his administrators and heirs then formally withdrew said exceptions of said Allen M. Smith, deceased, rendered in said report of sale. It does not appear, that said Smith, deceased, before his death offered, or wished, to withdraw his said exceptions to said sale.

W. L. Childers one of the administrators, I infer from what appears in the record, is the same person who had sworn on the 12th day of November, 1874, that in his opinion the land sold was worth $10.00 per acre, and also one of the persons, who was engaged in cutting and con-

verting valuable timber on said land. It is evident to my mind, from the facts and circumstances that the reason, the said administrators and heirs withdrew the exceptions of said Smith to said sale, was a conviction and knowledge upon their part, that said land had so depreciated in value, and been injured by the cutting and conversion of valuable growing timber thereon, that it was not in fact worth as much, as it sold for at said commissioners' sale.

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

Thus it is seen in this case, that the owner, Smith objected to said sale and the confirmation thereof by the court and that through the action of a part of the creditors, who were parties to the suit, in obtaining and prosecuting said appeal and *supersedeas*, action by said circuit court upon said report of sale in every respect was obstructed and prevented, notwithstanding the appellants have paid said special commissioners a large sum of their money down payment on their purchase, and had in every other respect complied with the terms of said sale, and were not in default, and were in no manner chargeable with the extraordinary delay in final action upon said report of sale by the court.

Under these circumstances and facts, was it just, and in accordance with the principles of equity and of good conscience, for the circuit court to overrule the exceptions of the appellants to said sale and the report thereof, and to dismiss their said petition? Upon reason, principle, and the authorities on the subject, as I understand them, I humbly think not. It was over three years from the day of sale, before the court confirmed it, or acted in any manner on said report; and, as we have seen, no part of the delay was caused or produced by the appellants, or either of them.

In the case of *Jackson* v. *Edwards*, 7 Paige, before cited, so far as I can see from the report, not more than a year's delay was caused, and in the meantime the property largely depreciated in value, as here; and yet it was held in that case, as we have seen, that the purchasers by

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

reason thereof should not be required to complete their purchases.

Ordinarily it is fair to presume, that all persons, who bid at sales of commissioners under decrees of courts of equity, do so with the tacit understanding, at least, that the sale will be reported and approved or disapproved within a reasonable time, and that the highest bidder will not be kept in doubt, as to the result, and out of the use of money, he pays to the commissioners at the sale on his bid, for an unreasonable length of time thereafter, when he is not in default, and is guilty of no *laches* or fraud or the like, and has not acquiesced in the unreasonable delay.

Justice to the bidder at such sales, and public policy in relation thereto, require and demand, that such sales be reported, and either approved or disapproved in a reasonable time after the sale, or the highest bidder, if he so desires, should be released from the obligation of his bid when the delay is not caused by his opposition to the confirmation of the sale, and is not attributable to his default, *laches*, fraud or the like, and he has not acquiesced in such delay, and it appears that during such unreasonable delay the property has depreciated in value for causes beyond his control.     What is such reasonable time, must of necessity depend to some extent upon the circumstances and facts surrounding each case; and the court in determining the question must exercise a sound discretion in the interest of fairness, prudence, and the rights of all concerned in view of all the surrounding circumstances.

*Syllabus 2.*

The confirmation of the sale in this case, under the facts and circumstances appearing, and after such long delay, would cause the appellants most probably to incur loss to a considerable extent on their purchase, and would necessarily tend to deter bidders from attending and purchasing property under decrees of courts of equity.   A court of equity will not give a purchaser at a sale by its commissioners the benefit of his purchase, by confirming it, where he neglects to comply with the terms of sale

*Syllabus 1.*

1878
August Term.

Hyman, Moses
& Co. *et al.*
v.
Smith *et al.*

within a reasonable time, if a re-sale is deemed more beneficial to the parties, or where the purchaser has complied with the terms of sale, if it clearly appears from the facts, circumstances and evidence before it, that the sale was made at a greatly inadequate price. And so the court will not compel him to take the land by confirming the sale, where, by the acts of the parties to the suit, action by the court upon the report of the sale has been delayed for such an unreasonable time, that confirmation of the sale most probably would cause him loss, if the purchaser is not in default, or guilty of laches, fraud, or the like, and has not acquiesced in the unreasonable delay; as where it appears, that during such unreasonable delay the property has most probably depreciated in value. But it seems to me, that the court ought not to disapprove, and refuse to confirm the sale within a reasonable time after it is made by the commissioners, simply because the property has within that time depreciated in value. It may be that when the property, or a material part thereof, has been destroyed by fire or flood within such reasonable time after the sale by the commissioners, the court ought to decline to confirm such sale, if desired by the purchaser, or allow him proper deduction from the sale price for the destruction of the property; but as that question is not presented in this case, I do not express an opinion upon it.

In view of all the facts and circumstances appearing in this case, and the principles of equity, applicable and governing in such cases, as I understand them, it seems to me, that the circuit court of the county of Kanawha erred in its said decree of the 20th day of December, 1877, in not sustaining the exceptions of the appellants to said report of sale of special commissioners, Edward B. Knight and William H. Hogeman, of the tract of land, in said report of sale and decree mentioned, and in dismissing the said petition of the appellants, and in approving and confirming the sale and the report thereof.

The court should have set aside said sale and the re-

1878
August Term.

Hyman, Moses
& Co. et al.
v.
Smith et al.

port thereof, and caused the cash, or down, payment, made by the appellants to said special commissioners, with proper interest thereon, to be repaid to the appellants, and cancelled the time obligations given by them with security for the deferred instalments of purchase money; and made such other and further decree in the cause, as was proper, and in accordance with the principles and rules governing courts of equity.

I deem it unnecessary to consider the appellants' said third assignment of error, because under and according to the views I have taken and expressed on the other questions, involved in the cause, and hereinbefore considered, this assignment of error is immaterial.

For the foregoing reasons the said decree of the circuit court of Kanawha county, rendered in this cause on the 20th day of December, 1877, must be reversed ; and the appellants recover against the administrators of Allen M. Smith, deceased, their costs about the prosecution of their appeal and *supersedeas* to said decree in this court expended. And this court proceeding to render such decree, as the said circuit court should have rendered, it is adjudged, ordered and decreed, that the report of sale of special commissioners, William H. Hogeman and Edward B. Knight, heretofore returned and filed in this cause, showing that on the 5th day of August, 1874, they sold, pursuant to decree entered in this cause, to William A. Bradford, Edward A Bennett and John S. Burdett a tract of three thousand eight hundred and eight-one acres, as the property of Allen M. Smith, since deceased, described in said report, at the price of $3.36 per acre, or $13,040.16 for said tract of land, and the sale of said land, in the said report of sale mentioned, be, and the same is hereby disapproved and set aside ; and the cause is remanded to the said circuit court, with instructions to that court to cause the cash payment, made by the said W. A. Bradford, Edward A. Bennett and John S. Burdett, of $2,608.03 in said report of sale mentioned, with proper interest thereon from the

time of its payment to said commissioners, to be refunded and repaid to them, the said Bradford, Bennett and Burdett; and to that end, and to accomplish that purpose, to make all proper orders and decrees in the cause, and cause all proper steps and proceedings to be taken and had; and to cancel and annul the three several bonds, given by said Bradford, Bennett and Burdett, with Henry S. Walker as their security, for the deferred installments of purchase money for the land, in said report of sale mentioned; and for such other and further proceedings therein then to be had, as may be in accordance with the rules and principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.