# WHEELING.

## ARNOLD & RUFFNER v. CASNER et al.

Submitted January 24, 1883—Decided November 10, 1883.

1. It is not essential that a creditors' suit should be such in its inception. A bill filed by a single creditor of a decedent's estate, or a single judgment-lien-creditor of a living debtor, if in other respects proper, may by an order of reference to a commissioner and convention of the other creditors entitled to be provided for in the suit, be converted into a creditors' suit, and it will be regarded as such from the time such order of reference is made. The more usual and better practice, however, in such cases, is for the plaintiff to sue on behalf of himself and other creditors of the same class as himself. (p. 455.)

2. The authority for such suit is not derived from our statute—Code, chapter 86, section 7—but exists independent of it. The statute, however, confers upon the personal representative of a decedent the right to bring such suit where the personal estate is insufficient to pay the debts, a right which he did not have before the statute. (p. 456.)

3. Creditors who file their claims before the commissioner in such a suit, although not formal parties to the bill, become informal parties to the suit and are as effectually bound, and the court has the same jurisdiction over them, as if they had been made formal parties to the bill and been served with process. (p. 456.)

4. In such suit judgments against the administrator of the decedent are filed before the commissioner and he reports them as liens on the real estate of such decedent, and such report is confirmed without exception. It then is too late to make objections to said claims after said confirmation of the report, unless it is done by petition for a re-hearing or a bill of review. (p. 457.)

5. To have real estate rented rather than sold, under the law of this State prior to the act of March 26, 1882, was a privilege accorded to the debtor and not an absolute right. And, therefore, to entitle him to the benefit of this privilege he must exercise reasonable diligence in claiming it, and where he has not done so and shows no sufficient excuse for his neglect, he cannot be permitted at the last moment to have the cause sent to a commissioner or otherwise delayed to ascertain whether or not the rents and profits of land will pay the debts in a reasonable time. (p. 458.)

6. A *pendente lite* purchaser, who obtained a conveyance of the land in suit seven years before he asks to be made a party to the suit

as such purchaser, and before the date of the conveyance to him a report of the debts had been made by a commissioner and confirmed by the court, of which he had notice and acquiesced therein by applying the greater part of the purchase-money to the payment of said debts, will not, after such delay and acquiescence, be permitted, on his petition, to be made a party to the suit in order that he may re-open questions settled by the the court and by which the parties to the suit are bound, and have them re-litigated at his instance.   (p. 4̇9.)

7. Nor will such *pendente lite* purchaser, under the circumstances, be treated as a *bona fide* purchaser within the meaning of section 5 of chapter 86 of the Code, and as such be entitled to hold the lands so purchased by him exempt from liability for the debts so reported and ordered to be paid in the suit.   (p. 460.)

8. The proper rule for the court in directing a sale of real estate, is to direct, in the decree ordering the sale, that the cash payment shall be retained by the commissioner making the sale, or be paid into bank to the credit of the suit, subject to the future order of the court.   The money being thus under the control of the court, will, upon the confirmation of the report or upon setting aside the sale, be disposed of in the way that shall then seem proper.   (p. 461.)

SNYDER, JUDGE, furnishes the following statement of the case:

In March 1870, Moses F. Ward died intestate, without children, leaving a widow, Ellen D. Ward, who, under the statute then in force, was the sole heir and distributee of his estate.   The said Ward was the owner and died seized of valuable lands, situate in Kanawha county, which he in his life-time had encumbered by several trust-deeds to secure debts.   These trust-debts were unpaid at his death.   After his death the said Ellen by deed, dated June 2, 1870, in execution of a verbal agreement made by him in his lifetime, conveyed away part of the lands descended to her as his heir, in exchange for other lands conveyed to her by one Thomas by deed of same date.   The said Ellen qualified as administratrix of said estate and afterwards intermarried with James Casner.   Her marriage having terminated her administration, her then husband, James Casner, qualified as administrator *de bonis non* of said estate.

At May rules 1872, Arnold & Ruffner filed their bill in the circuit court of Kanawha county to subject as well the lands

descended to said Ellen from her late husband as those con-veyed to her since his death by said Thomas, to the payment of a judgment recovered in said court by them against her and James Casner, her then husband, for a debt contracted by her while she was the widow of said Ward and before her marriage to said Casner, and also to satisfy the trust-debts of said Ward resting upon said lands. The trust-creditors and trustees in said trust-deeds and the said Ellen and her hus-band, James Casner, the latter also as administrator *de bonis non* of said Ward, were made defendants to the bill. Casner and wife demurred to the bill and the court overruled their demurrer. The cause was referred to a commissioner to as-certain and report:

"First. What real estate vested in Ellen Casner by the death of her first husband, Moses F. Ward; what has she acquired since his death; what property, real or personal, is now owned by her which is subject to the payment of the plaintiff's debt.

Second. What trust-deeds, or liens by judgments or in any manner whatsoever, are upon the land; their character, amount, order of priority, &c., &c.; to whom and when they are due, and all other matters material thereto; and in this enquiry the commissioner shall report what liabilities or liens are upon the estate as due from the estate of Moses F. Ward.

Third. The nature and amount of the plaintiffs' claim.

Fourth. That he settle and state the account of James Casner as administrator of Moses F. Ward, deceased.

Fifth. The personal property belonging to the defendant, Ellen D. Casner, subject to levy upon execution within the jurisdiction of this court.

Sixth. Such other and further matter as the commissioner shall deem pertinent or either of the parties may require.

It is further ordered that the commissioner give notice of the time and place of making said report by publication thereof for four successive weeks in some newspaper pub-lished in Kanawha county, and that such publication be deemed equivalent to personal service of such notice upon the parties to this suit.

It is further ordered that the clerk of this court give notice to the creditors of Moses F. Ward, deceased, to present and

prove their claims against said estate before said commissioner as provided in section 8 of chapter 86 of the Code of West Virginia, by publication of said notice for six weeks in the *West Virginia Courier*, a newspaper published in said county of Kanawha, and by posting the same as required by law."

The commissioner and clerk having published the respective notices in the manner required by said order, the commissioner in pursuance thereof made, and on February 1, 1873, filed his report, from which it appears that the said Moses F. Ward at the time of his death was the owner of much valuable real estate consisting of several tracts or farms, one of which had been exchanged by his widow for another farm conveyed to her by one Thomas; that some of said tracts had been encumbered by trust-deeds executed by said Ward to secure to different persons large debts which remained unsatisfied at his death. These debts and a number of others, including that of the plaintiffs, were duly reported. But as all of said debts except the following had been paid before the decrees complained of were entered, it is unnecessary to refer to any of the others: To B. W. Creel five thousand two hundred and forty-two dollars and fifty-seven cents, John Slack sr., twenty-four dollars and ninety-six cents, P. W. Morgan eight dollars and seventy-five cents, John Burdett, administrator, twenty-three dollars and ninety-five cents, James W. Oakes twenty-five dollars, and B. W. Creel four thousand three hundred and fifty-one dollars and forty-seven cents, all as of February 1, 1873. The last mentioned of said debts is in class six and all the others in class seven and all of them are reported as liens on the real estate owned by the defendant, Ellen D. Casner, consisting of two tracts of land of which Moses F. Ward died seized and which were inherited by said Ellen, and also the tract conveyed to her by Thomas.

The report shows that the first of said Creel debts is made up of bonds executed by Moses F. Ward in his lifetime and three bonds for one hundred and fifty dollars, fifty dollars and two hundred and fifty dollars given by Mrs. Ward during her coverture as the wife of said Ward, reduced by a general credit for three thousand dollars paid by Mrs. Ward

as administratrix June 6, 1871. The other Creel debt for four thousand three hundred and fifty-one dollars and forty-seven cents is founded on a bond executed by Mrs. Ellen D. Ward November 28, 1870, during her widowhood. Of the small debts two of them are clerk's and sheriff's fees and the other two are judgments against the administrator of Moses F. Ward. And the record also shows that by written agreement of the said Ellen D. Ward, entered into on June 6, 1871, during her widowhood and while she was administratrix of her late husband, Moses F. Ward, she assumed to pay all the debts due to said B. W. Creel from herself individually or from the estate of her late husband.

The commissioner reports that no vouchers or papers had been laid before him referring to the account of the defendant, James Casner, as administrator of said Ward, and that he is unable to report in regard thereto. And he also reports that no evidence had been produced tending to show any personal property belonging to the defendant, Ellen D. Casner, subject to execution, and having no personal knowledge of any, he reports that she owns no such property.

The defendants, Casner and wife, excepted to this report, because the court did not order and the commissioner did not state an account of Ellen D. Casner as administratrix of Moses F. Ward, and because the court did not order and the commissioner did not state an account of what personal estate there was, if any, liable to the debts of said Ward. They also filed some other exceptions, but as they relate merely to the form and not to the substance of the report, they need not be stated.

The cause was heard on June 19, 1873, and the court being of opinion that Ellen D. Casner should be made a party as administratrix of Moses F. Ward, the plaintiffs were permitted to amend their bill at bar making her such a party, and the cause was then recommitted to the commissioner with instructions to state and report a settlement of the fiduciary account of said Ellen as administratrix of said estate, and to consider and report upon the exceptions filed to his former report, and also upon the matters called for in the former reference. He was also required to give notice by publication of the time and place of making his report, and

to have the clerk of the court publish the notice required by law to convene the creditors of the estate of said Ward.

The respective notices required by said order having been duly published, the commissioner pursuant to his notice commenced, September 20, 1873, to make his second report, and while proceeding with it he was informed, as he states therein, "by the parties chiefly interested in this cause, that negotiations were then pending for a private sale of the property in complainant's bill mentioned for a sum more than sufficient to pay off and discharge all the liabilities against said estate, and which, if effected, would save much of the cost and litigation likely to be involved in this cause; and thereupon, at the instance of said parties, this report has been adjourned and continued from day to day and from time to time until up to the present time.

"Your commissioner has been informed by the parties interested herein generally that said sale has been made, as hereinbefore referred to, satisfactorily to the creditors specified in his former report, and all that remains to be passed upon by him and referred to your honor are such of the claims referred to in his former report, the validity of which are disputed by the defendants, Cassner and wife, and such new claims as have been laid before the commissioner since the filing of his last report."

The commissioner then proceeds to consider the claims disputed by the defendant, Ellen D. Casner. None of the claims hereinbefore specified are considered by the commissioner as disputed claims except the items of fifty dollars, one hundred and fifty dollars and two hundred and fifty dollars evidenced by the notes of Ellen D. Ward. The correctness of these items was not controverted but their validity was disputed upon the sole ground that the said Ellen was a married woman at the time the notes were given. Under all the circumstances and especially the smallness of the claims and the wealth of the said Ellen and her husband at the time the debts were incurred, the commissioner allowed the first two of said items and disallowed the other of two hundred and fifty dollars. In addition to the debts in his first report the commissioner allowed the following which remained unpaid: To George Eastwood twenty-seven dollars and seventy-five

cents, to Amanda Miller nine dollars and eleven cents, to Annanias Means sixteen dollars and fifty-seven cents and to J. C. Chittam six dollars and fifty cents, all of which are judgments against the administrator of Moses F. Ward, and are reported as class nine of the liens on the lands of the defendant Ellen D. Casner, the other unpaid debts constituting classes six and seven of the liens thereon as shown by the commissioner's first report. In concluding this report, which seems to have been completed about June 1, 1874, the commissioner states, that inasmuch as the lands have been sold and the parties having informed him that any further report was unnecessary, he made no report as to the other matters contained in the order of reference. The commissioner's fee for this report is endorsed thereon as having been paid by D. F. Connell.

B. W. Creel excepted to this report because it disallowed his claim of two hundred and fifty dollars, and the defendants Casner and wife excepted because it allowed in favor of Creel the items of one hundred and fifty dollars and fifty dollars and also because it failed to allow as an offset against Creel's debt two small items of account filed by Ward's administrator. These were all the exceptions filed to said report.

The cause was again heard, on June 25, 1874, and the court by its decree of that date overruled the exceptions of Creel and of Casner and wife to the commissioner's report except to the extent of allowing the latter a credit of twenty-five dollars, a part of their account referred to in their exception, and the decree then proceeds: "And there being no further exceptions to said original and supplemental reports of Commissioner Gillison, and the same being seen and inspected by the court, it is adjudged, ordered and decreed that the said reports, modified and corrected as hereinbefore directed, be approved and confirmed, and that the defendant do pay the costs of this suit, including thirty dollars, to the plaintiffs as allowed by law."

By an order entered, December 11, 1878, G. R. Creel and E. D. J. Bond, administrators of B. W. Creel, were made parties plaintiffs to the cause on their petition which was then filed by leave of the court. In their petition said administrators aver the death of the said B. W. Creel and their

qualification as his administrators. They then state the debts reported by the commissioner in favor of said Creel against the defendants Casner and wife, that said debts are still unpaid, and pray that they may be made co-plaintiffs in the suit and have such relief as is consistent with equity.

By another decree also entered on December 11, 1878, the cause was again referred to the same commissioner to report what payments, if any, have been made on the debts and liens stated in his former report, before filed and confirmed, since the confirmation thereof, and the amount still remaining unpaid on each of said debts. The commissioner having made and filed his report, by consent of parties an order was made December 19, 1879, re-committing said report with instructions to the commissioner to further report upon the matters theretofore referred to him and directing him to give notice of the taking of his account to the counsel of the plaintiffs and defendants and to D. F. Connell. In response to this order the commissioner on May 27, 1880, filed his final report, from which it appears that the only debts then remaining unpaid are the two debts due to B. W. Creel's estate and the other small debts hereinbefore mentioned and specified. The first of said Creel debts having been reduced by payments recently made, the residue is reported to be four thousand one hundred and nine dollars and sixty-four cents as of May 15, 1880, and classed as the first lien—all debts having priority in the former reports having been fully paid. The other debt of said Creel and the small debts with interest added to same date are reported and classed as the second lien on the real estate mentioned in the first report. On May 2, 1880, the counsel for "Connell and others" filed exceptions as follows: 1. This report and all the claims allowed therein are excepted to for the reason that none of the parties whose claims are allowed or rejected are before the court or are parties to the suit or are bound by any decree made in the suit. 2. No creditors' bill has been filed to charge the estate of Moses F. Ward with his debts. And 3. No notice has been given by the clerk to convene the creditors of said Ward as required by law."

On July 15, 1881, D. F. Connell tendered his petition,

stating that during the pendency of the suit he had purchased all the lands sought to be subjected, that the court had no jurisdiction in this suit over the claims sought to be enforced, or the parties seeking to enforce them, or over the lands sought to be subjected, and asking to be made a party defendant and allowed to litigate these matters. With said petition is exhibited a deed from the defendants, Casner and wife, to petitioner, dated July 30, 1874, and recorded in Kanawha county November 3, 1874, conveying to him, with covenant of general warranty, and in consideration of thirty-five thousand dollars, the lands sought to be sold in this suit. The court denied the prayer of said petition and refused to permit the same to be filed.

On the same day, July 15, 1881, the cause was heard upon the papers formerly read, the reports of the commissioner and the exceptions of D. F. Connell to the last commissioner's report, "and the court being of opinion that said Connell being a *pendente lite* purchaser is not entitled to be made a party in this cause or to be heard therein, doth refuse to entertain said exceptions and doth overrule the same, and there being no other exceptions to said last mentioned report, and the same being seen and inspected by the court, it is adjudged, ordered and decreed that it be approved and confirmed." The decree then directs that unless the debts reported and still due shall be paid within thirty days, that commissioners therein named shall, in the manner therein specified, sell the real estate in the bill and proceedings mentioned, or so much thereof as may be required to pay said debts, upon the terms of one-third cash and the balance on a credit of one and two years, &c., "and out of the cash payment the commissioners shall pay first the costs of this suit and the sale and the residue to the parties" whose debts are reported and allowed in said last report of the commissioner, "and report their proceedings under this decree to this court." The commissioners are also required to give bond &c.

Subsequently, on October 25, 1881, the defendants Casner and wife and said Connell filed a notice and made a motion under the statute to reverse said two decrees of July 15, 1881, which motion being resisted by counsel for the plaintiffs, B. W. Creel's administrators, was overruled and the court re-

fused to reverse said decrees.   From this decree and the said two decrees of July 15, 1881, the said Casner and wife and D. F. Connell were allowed an appeal and *supersedeas* by this Court.

*William A. Quarrier* for appellants:

1st. Under a bill filed to subject land descended to the heir, to the payment of a judgment obtained against the heir, and which bill is in no sense a creditor's bill against the estate of the ancestor, the general and simple contract creditors cannot prove their claims against the ancestor and obtain a decree to sell the lands formerly belonging to the ancestor. Code West Va., chap. 86.

2d. Under no conceivable circumstances can the mere notes or bonds executed by the heir, be construed to be charges or liens, either against the lands, as the property of the heir or as the property of the ancestor, which can be enforced in a court of equity.

3d. Sheriff's fee bills and clerk's fee bills for services rendered the personal representative are not liens on the lands of the deceased.   *Laidley* v. *Kline,* 8 W. Va. 218.

4th. Judgments against the personal representative are not liens or charges against the lands of the deceased, or even *prima facie* evidence of a charge or lien.   *Idem.*

5th. A purchaser from the heir, when no bill has been filed, as a creditor's bill against the lands of the ancestor, takes the lands free from the simple contract debts of the ancestor and all other debts not liens.   Code, ch. 86, sec. 5.

6th. *Quære.* If such creditor's bill had been filed before purchase, would it have bound lands in the hands of a purchaser without recordation of *lis pendens?*

7th. A decree of sale, which provides, that before confirmation the commissioners should make distribution of the cash payment made at sale among creditors, is clearly erroneous. 2 Rob. (old) Pr. 388; *Anderson* v. *Davies,* 6 Munf. 486; *Kable* v. *Mitchell,* 9 W. Va. 492.

8th. Under the circumstances of this case and in the state of pleadings disclosed by the record a purchaser pending the aforesaid suit had a right to come in and defend himself.

*E. W. Wilson* and *J. W. Wingfield* for appellees:

1st. A suit to enforce specific liens against the estate of a deceased person, may be transformed into a general creditors' suit. *Marling* v. *Robrecht et als.*, 13 W. Va. 440; *Neeley* v. *Jones*, 16 W. Va. 625.

2d. A *pendente lite* purchaser is not a necessary party to a suit, and should not be made so unless upon allegation of equities *dehors* the record. *Harmon* v. *Bryam's Administrator et al.*, 11 W. Va. 511; *Goddin* v. *Vaughan*, 14 Gratt. 102; *Price* v. *Thrash*, 30 Gratt. 515.

3d. The grantee of an heir cannot claim the land exonerated from the intestate's debts, under section 5, chapter 86 of Code, unless the conveyance were *bona fide*, and at the time of such conveyance, no suit shall have been commenced for the administration of decedent's assets, nor any report have been filed of the debts and demands of those entitled. And notice of *lis pendens*, under section 14, chapter 139 of Code, is not applicable to such case.  75 Va. 274.

4th. A consent report of a commissioner, when confirmed, should he held as inviolable as a consent decree, which can only be set aside after the close of the term by original bill, and not otherwise. *Armstrong* v. *Wilson et als.*, 19 W. Va. 108.

5th. Every part of a commissioner's report not excepted to, with reasonable certainty, must, after confirmation, be taken as correct both as to principles and evidence. *McCarty* v. *Chalfant*, 14 W. Va. 531; *Crislip, Guardian, &c.* v. *Cain*, 19 W. Va. 438.

6th. Exceptions to a committed report do not attach to a second report, unless expressly renewed. *Kee's Ex'r* v. *Kee et al.*, 2 Gratt. 116.

7th. Exception for want of notice of time and place of taking account, must be supported by affidavit, or otherwise show absence of such information as would have enabled attendance; and such exception must be taken before decree, and before argument and opinion of the court, though no decree, when party guilty of laches. *McCandlish, Adm'r* v. *Edloe et als.*, 3 Gratt. 330; *Winston* v. *Johnson's Ex'rs*, 2 Munf. 305; *Miler* v. *Holcombe*, 9 Gratt. 665.

8th. An interlocutory decree can only be set aside in cir-

cuit court by petition, or motion on notice, within five years; and a final decree, by bill of review, within three years, or appeal, within five years.  Code, ch. 134, sec. 5; ch. 133, sec. 5; Acts 1882, ch. 157, sec. 3; *Dick et als.* v. *Robinson Adm'r*, 19 W. Va. 159.

9th.  A creditor of a decedent's estate, who advances money to the heir, to satisfy a trust-lien upon the estate, is entitled to be substituted to all the rights of the trust-lien creditor.

10th.  When a contract for the exchange of lands between the intestate and another, is carried into execution by the heir, by conveyances, the land so conveyed to the heir is liable, in equity, to the satisfaction of decedent's debts.

11th.  Court may sell realty without regard to whether rents and profits will pay debt, in reasonable time, unless demand for rental be made by party to the record, and a *pendente lite* purchaser has no right to be made a party for such purpose.  *Rose & Co. et als.* v. *Brown et ux.*, 11 W. Va. 122.

12th.  A decree directing disbursement of proceeds upon *sale*, does not authorize distribution until confirmation of commissioner's report, as it is no *sale* until the decree of confirmation.  *Marling* v. *Robrecht*, 13 W. Va. 440.

SNYDER, JUDGE:

The facts of this case are of themselves very potent evidence that the appellants have no substantial ground of complaint.  If any errors have been committed they were merely formal and the appellants, by their utter indifference and gross negligence, to say nothing of their acts of positive approval, had precluded themselves from any right to complain long before the decrees appealed from were entered. To entitle parties in their situation to prevail they must present something more cogent than formal irregularities and fanciful objections.  They must show that substantial rights have been denied them or that legal principles have been violated and injustice thereby done them.  Has such been the case in this cause?.

It is objected that this is not a formal creditors' suit to settle and subject the estate of a decedent to the payment of debts, but that it is technically a bill to enforce a judgment-

lien against a living woman; and that, therefore, the court had no jurisdiction over the creditors of the estate of Moses F. Ward or power to sell the lands descended from him to his heir. It is not necessary that a creditors' suit should be such in its inception. A bill filed by a single creditor against the personal representative and heir of a decedent may be converted into a creditors' suit by the subsequent conduct of the cause. In this respect such a suit is governed by the same rules and principles that apply to a bill filed by a judgment-creditor to subject the real estate of a living debtor to the payment of his judgment. In either case the more formal and better practice is for the plaintiff to file his bill on behalf of himself and other creditors of his class, but this is not absolutely required. If the cause is referred to a commissioner for an account of the debts entitled to be provided for in the suit it from that time becomes a creditors' suit. The usual course is to publish a notice convening the creditors and thereby informally making them parties. And such informal parties have the same control and right to file and have their claims adjudicated in the cause as if they had been formally by name or as a class made parties, and upon filing their claims before the commissioner they become bound by the proceedings in the cause as fully as the most formal parties—Story's Eq. Pl. § 100; 1 Story's Eq. Jur. § 347; *Hendrick* v. *Robinson*, 2 Johns. Ch. 296; *Marling* v. *Robrecht*, 13 W. Va. 440; *Neely* v. *Jones*, 16 *Id.* 625; *Jackson* v. *Hull*, 21 *Id.*

The authority for such a suit is not derived from the statute, but exists independent of it. The material change made by our statute—Code ch. 86 § 7—was to confer upon the personal representative of a decedent the right to file a creditors' bill to subject real estate where the personal estate of his decedent is insufficient to pay the debts, a right which the personal representative did not have before the statute.

Whether, therefore, the bill is filed by a lien-creditor against a living debtor, or by a creditor to subject to its debts the estate of a decedent, the proceeding is much the same, and the allegations of the bill very similar. The difference is more in the descriptive character of the parties than in the substance of the suit. In the one case the debts are made

charges by statute and in the other they are positive liens. The bill in this suit is by judgment-creditors against their debtor and other lien-creditors of the same debtor, and also against the personal representative and heir at law of a deceased person. And the real estate sought to be sold, is subject not only to the lien of the plaintiff's judgment but is also liable for the payment of the debts of the decedent. The latter debts having precedence over that of the plaintiffs, it was necessary that the creditors holding those debts should become either formal or informal parties to the suit. They were not all made formal parties—some of them were—and the others were convened by publication as prescribed by law, an account of their debts was ordered, they appeared and filed their debts before a commissioner who reported them and the report was confirmed by the court. By this proceeding all those who filed their claims became parties to the cause as effectually as if they had been made such by the plaintiffs' bill, and the court had as complete jurisdiction to bind them by its orders and decrees as any other party to the cause.

But it is further objected that some of the small debts decreed to be paid from the real estate are judgments against the administrator, and that such claims are not evidence against the heir. It is unquestionably true that judgments against an administrator are not as such binding upon the real estate which descended to the heir. But in this cause all the debts, including those now claimed to be merely judgments against the administrator, were reported by the commissioner and allowed by him as *liens* against the real estate sought to be sold and said report was confirmed by the court in June, 1874, without exception or objection to said debts or any claim that they were not valid liens as reported. By said report the appellants and all other parties were concluded; because, it is the settled law of this State, that the parts of a commissioner's report not excepted to are admitted to be correct not only as regards the principles, but also as to the evidence upon which they are founded. *McCarty* v. *Chalfant*, 14 W. Va. 531; *Ward* v. *Ward*, 21 *Id.* 262.

It is further objected that the lands decreed to be sold included land which never belonged to the decedent, Moses F.

Ward. All these lands were legally or equitably liable for the debts of said Ward. The lands conveyed to the appellant, Ellen D. Casner, by Thomas, were acquired in exchange for lands of which said Ward died seized and in pursuance of a verbal agreement made by him in his lifetime. And, moreover, the commissioner reported that the debts were all liens upon the whole of the lands decreed to be sold and this report was confirmed without objection or exception to that part of it, and the appellants were thereby concluded from making any objection to that part of the report except by bill of review or petition for a re-hearing filed in proper time, which was never done.

The objection that no account of the personal assets was taken was waived by the parties chiefly interested—the appellants. During the taking of the account by the commissioner they notified the commissioner that a sale of the lands had been made to pay off the debts and for a price more than sufficient for that purpose, and in consequence thereof, and to save costs, no such account was desired. The exception to the first report on this ground was not only waived by this arrangement but no exception was taken to the second report for the want of such account. The exceptions to the first report do not attach to the second or recommitted report which was not excepted to upon that ground—*Kee* v. *Kee*, 2 Gratt. 116.

The appellant, Ellen D. Casner, having during her widowhood, in June 1871, assumed to pay off the Creel debts—both those due from her individually and from the estate of her late husband—equity had jurisdiction to enforce those debts against her and also against the lands owned by her, whether acquired by purchase or descent from her late husband. And the petition filed by Creel's administrators was sufficient to authorize the court in this suit to decree the payment of said debts out of said lands.

To have real estate rented rather than sold under the law prior to the act of March 26, 1882, was a privilege and not an absolute right accorded to the debtor; and, therefore, to entitle him to the benefit of this privilege he must exercise reasonable diligence in claiming it in the court below, and where he has not done so, and shows no sufficient reason why

he has not done so, he cannot be permitted at the last moment to avail himself of such privilege and have the cause sent back to a commissioner or otherwise delayed—*Hill* v. *Morehead,* 20 W. Va. 429.

In this cause four different references had been made and four reports made by a commissioner. During the time these reports were being made no account of the rents and profits was asked for by any one or suggestion offered that the rents and profits of the land would pay the debts in a reasonable time. The first intimation on the subject was made in the petition of Connell on the day the decree for a sale of the lands was entered. This was clearly too late.

It is further objected that the court erred in excluding the petition of the appellant, Connell. By this petition he asked to be made a party for the purpose of re-litigating the rights of parties already settled by the decrees of the court. He was a *pendente lite* purchaser. He consummated his purchase by a conveyance of the lands to him July 30, 1874, and his petition was not tendered until July 15, 1881, seven years after his purchase. This suit was brought in 1872. Two reports of the debts had been made, the second of which had been confirmed in June, 1874, before the lands were conveyed to Connell. The report thus confirmed reported the debts now disputed as constituting *liens* on these lands. It is evident not only that Connell had notice of these debts and that they had been declared to be liens on the lands conveyed to him before such conveyance, but it is equally apparent that he purchased subject to said debts with the understanding that he was to apply so much of the purchase-money as might be required to pay off said debts; because soon after his purchase he commenced paying off the debts so reported and thereafter continued to do so until he had paid from eighteen thousand dollars to twenty thousand dollars on said debts. He even paid the commissioner's fee for making the report. He paid all said debts except the balance still due on the Creel debts and the other unpaid small debts as shown by the statement preceding this opinion. He made no objection to any of said debts, nor did he ask to be made a party to this suit, but continued to pay off the same without complaint from him or the appellants, Casner and wife, until July, 1881,

nearly seven years after his purchase and more than a year after the fourth and final report of the commissioner had been completed and filed in the cause; then, he for the first time tendered his petition and asked to be made a party to the suit and to be permitted to re-open and re-litigate questions which had been finally settled as to all the parties to the cause and actively acquiesced in by him for nearly seven years. It was only after all other means of delay had become hopeless and a sale of his lands was about to be ordered, that he was driven to the expedient of asking to be made a party in order to gain, if possible, further delay. To allow such a practice to prevail in a court of equity would be a reproach to equity jurisprudence. Therefore, without considering under what circumstances it may be proper to allow a *pendent elite* purchaser to be made a party to a cause, it is certain that in this case the circuit court did not err in refusing the petition of the appellant, Connell. Story's Eq. Pl. §§ 156, 351; *Harman* v. *Byram,* 11 W. Va. 511; *Goddin* v. *Vaughan,* 14 Gratt. 102; *Price* v. *Thrash,* 30 *Id.* 515.

It is claimed, however, that the lands purchased by Connell were exempted from liability for the debts of the estate and the heir of Moses F. Ward, under the provisions of section 5 of chapter 86 of the Code. The provisions of this section are, that "the estate shall not be liable, *if the conveyance was bona fide, and at the time of such conveyance* no suit shall have been commenced for the administration of said assets, *nor any report have been filed* as aforesaid of the debts and demands of those entitled." Now, whatever may be said of the character of this suit in its inception, it had been converted into a suit for the administration of the assets of the estate of said Ward, and a report of the debts and demands of those entitled had been filed and confirmed in which said debts were reported to be liens on said lands, before the conveyance to Connell. And further, Connell had actual notice of said debts at the time of the conveyance to him and he was not, therefore, such a *bona fide* purchaser as would entitle him to the protection of said statute—*Easley* v. *Barksdale,* 75 Va. 274.

The only remaining objection which I deem it material to notice, is, that the decree of sale is claimed to be fatally de-

fective on its face, because it orders the distribution of the cash payment by the commissioners before the confirmation of the sale by the court.   The decree does not in terms direct the commissioners to disburse the cash payment before the confirmation of the sale, but from the language used it may be implied that such was the intention, although the implication is equally admissible that the disbursement should be made after the confirmation.   It merely directs *the manner* of the distribution of the cash payment without fixing *the time* of the distribution.

A judicial sale is the act of the court and not of the commissioner who offers the property and receives the bids. The sale is not complete until a report of the bidding has been made and confirmed by the court.   And, therefore, it would be irregular, though not sufficient ground, perhaps, to reverse the decree, for the court, by its decree ordering the sale, to direct the disbursement of the cash payment before the confirmation of the sale—*Anderson* v. *Davies,* 6 Munf. 486.   The proper rule in such sales is, to direct in the decree ordering the sale that the cash payment shall be retained by the commissioners making the sale, or be paid into bank to the credit of the suit, subject to the future order of the court.   The purchase-money being thus under the control of the court, will, upon the confirmation of the report or upon setting aside the sale, be disposed of in the way that shall then seem proper—2 Rob. (old) Pr. 388.

Therefore, upon the law and the facts, for the reasons aforesaid, I am of opinion that the decrees complained of should be affirmed with costs to the appellees, B. W. Creel's administrators, and thirty dollars damages.

THE OTHER JUDGES CONCURRED.

DECREES AFFIRMED.

# WHEELING.

Submitted January 24, 1883—Decided November 10, 1883.