# CHARLESTON.

STOUT *v.* PHILIPPI MANUFACTURING & MERCANTILE CO. *et al.*

Submitted June 19, 1895—Decided November 29, 1895.

1. **APPEAL—PARTIES.**
   One not a formal party can not appeal, though affected as a *pendente lite* purchaser.

2. **APPEAL—LIMITATION OF APPEAL.**
   An appeal taken in time from a decree will bring up for review

every former order or decree not itself appealable, no matter when entered, and every appealable decree entered not more than two years before the appeal; but it will not bring up for review any appealable decree or order entered more than two years before the appeal. Nor can any error in the decree or order appealed from in time be reviewed, if that error be based solely on an appealable decree or order entered more than two years before the appeal; and furthermore, of course, no error in an order or decree back of such appealable decree, dating over two years back, can be reviewed, no matter what the character of the order or decree in which it was committed.

3.  *Pendente Lite* PURCHASERS—*Lis Pendens*.

Pendente lite purchasers, after recordation of a notice of *lis pendens*, where that is required, though not formal parties, are bound by the adjudication touching the property purchased by them, involved in the suit, as if formal parties.

4.  *Pendente Lite* PURCHASERS—NOTICE OF FACTS.

Pendente lite purchasers are charged with notice of all the facts of which the record of the suit would inform them at the date of their purchase. But this is only for the purposes of that suit, and for the benefit of its parties, not for other separate suits or parties.

5.  *Pendente Lite* PURCHASERS—RENTS AND PROFITS.

Pendente lite purchasers occupying the estate, when the record charges their grantor with fraud in fact in the acquisition of the property, are chargeable with rents and profits.

6.  MORTGAGOR—RENTS AND PROFITS—MORTGAGOR'S ALIENEE.

While a grantor in a deed of trust, or mortgagor or judgment debtor, in possession of the land, or his alienee, innocent of fraud in fact, is not chargeable with rents and profits during the pendency of a suit to subject the land to the debt, yet an alienee of such debtor chargeable with fraud in fact is so chargeable.

7.  FRAUD—PARTICIPANTS IN FRAUD—RELIEF.

One party guilty of fraud in a transaction can have no relief in equity against another person, though equally guilty of fraud in the same.

8.  JUDICIAL SALE—DEFAULTING BIDDER—EQUITY PRACTICE.

If one becomes a purchaser at a judicial sale, and fails to complete his purchase as required by the decree, he is liable for the difference between the amount of his bid and the sum realized at a second sale; but, to hold him liable, the sale must be reported and a rule awarded and served upon him to show cause why he should not complete his purchase, or, in default, the property be resold at his expense, and at his risk of liability for any difference between the sum for which he agreed to purchase and the sum realized on a resale.

Dayton & Dayton and F. O. Blue for appellant:

I.— *Creditor secured by deed of trust is bound by its terms unless he dissents or disclaims.*—38 W. Va. 409.

II.—*Deed fraudulent as to others, good inter-partes.*—32 W. Va. 232; 27 W. Va. 206; 9 W. Va. 552; 24 W. Va. 730.

III.—*Fraudulent beneficiary can reap no subsequent benefit though his debt be valid.*—25 W. Va. 243; 15 N. Y. 334; 4 Comstock, 449; 4 Hill, 424; 2 W. Va. 502; 3 W. Va. 571.

IV.—*Appeal from final decree brings for review all intermediate proceedings.*—9 W. Va. 680; 25 W. Va. 133; 26 W. Va. 534.

V.—*Rents and profits must be sequestered before creditors can secure them.*—33 W. Va. 66; 1 Gratt. 295; 4 Gratt. 187, 208; 32 W. Va. 559; 15 W. Va. 425; 27 W. Va. 428.

VI.—*Equity will give no one the benefit of his own fraud.*—33 Am. St. Rep. 331; 25 W. Va. 243; 4 Pet. 184.

Samuel V. Woods for appellees, cited Code, c. 135, s. 1, clause 7; Code, c. 135, s. 3; Code, c. 53, s. 52; 25 W. Va. 807; 30 W. Va. 443.

Brannon, Judge:

B. B. Stout brought a suit in equity in the Circuit Court of Barbour county against the Philippi Manufacturing & Mercantile Company, a corporation, and others, to recover a debt due Stout from the corporation, alleging that said corporation had become embarrassed to insolvency and that it had executed a deed of trust upon certain personal property to secure a debt to the Farmers' Bank of Philippi, and later a deed of trust upon all its real estate and machinery attached thereto, to secure various debts, in certain order, preferring a large indebtedness to said bank over Stout's debt; that both said deeds of trust, for certain reasons stated, were fraudulent and void as to creditors other than the bank; and that the bank and the trustees were participants in the fraudulent transactions culminating in and including said deeds of trust.

The bill prayed that said deeds of trust be annulled, and the properties of the corporation subjected to the payment of Stout's debt.

Later, other creditors of the said corporation brought several separate suits, of like character, to recover their respective debts, and to overthrow said deeds of trust and subject the said property to their debts.   These cases were jointly heard, and a decree dated 17th March, 1888, declared both of said deeds of trust fraudulent and void as to Stout and other general creditors of the Philippi Manufacturing & Mercantile Company, set them aside, and also the sale under one of them, and subjected the said real estate to pay certain creditors—those so suing.

The trustees in the deeds of trust and the bank were parties to these suits, and Stout recorded a notice of *lis pendens* of his suit, but the Douglasses were not made parties. Later, they filed a petition to be subrogated to a lien, and later still, a petition for rehearing, but otherwise were not parties.

Pending the suits the trustees under the deed of trust conveying the real estate sold it to S. C. Douglass and T. B. Douglass, who took possession, and held under their purchase from the trustees until it was sold later by the commissioners under the decree above mentioned.   Under that decree the commissioners sold the property to S. C. Douglass, but he did not complete this sale by complying with the terms of sale prescribed by the decree, by giving notes with security; and a few days later, by consent of the parties by their attorneys, the property was resold, without readvertisement or order of resale, and purchased by S. C. Douglass at a price less by one thousand, two hundred and fifty dollars than his former bid, and this sale was reported to the court and confirmed, reserving to the creditors any right to hold Douglass for the said difference.   Both sales were reported by separate reports—filed, it seems, at the same time—and both heard together.   Later, the Farmers' Bank of Phillippi moved for a rule against Douglass to show cause why he should not be compelled to pay the said difference between his first and second bids for said property.   Later, a decree was entered which required Douglass to pay the said difference, with interest; and it required S. C. Douglass and T. B. Douglass to pay one thousand and five hundred dollars, with interest, for rents and profits of

said mill property from the date of their purchase from the trustees to the date of S. C. Douglass' purchase of it of the commissioners under the decree.

From this last decree, dated 24th February, 1894, S. C. Douglass has appealed. I have stated only so much of the large record as I deem necessary to reflect the adjudication of law made in the case.

The appellant assigns errors in the first decree. Neither he nor T. B. Douglass was a formal party at its date. S. C. Douglass became *quasi* a party at later date, as purchaser under the decree, and the two filed two petitions, one of them asking re-hearing; and S. C. Douglass became a party to the rule to compel him to pay the difference between his two bids. As such purchaser, he could not appeal from former decree. Per Miller, Judge, *Blossom* v. *Railroad Co.*, 1 Wall. 655. As a *pendente lite* purchaser he could not appeal. Those under whom such a purchaser holds represent him. Benn. *Lis·Pend.* § 325. But, waiving the question whether otherwise he was such a party as can assign error in that decree, there is the bar of time, precluding review of any error in that decree—almost seven years; two years being the limitation. Code, c. 135, s. 3. But counsel says that an appeal from a final decree brings up for review all preceding decrees out of which any error complained of in such final decree has arisen. This statement is too broad. An appeal taken in time from a decree will bring up for review every former order or decree not itself appealable, no matter when entered, and every appealable order or decree entered not more than two years before the appeal; but it will not bring up for review any appealable order or decree entered more than two years before the appeal. Nor can any error in the decree or order appealed from in time be reviewed, if that error be solely based on an appealable order or decree entered more than two years before the appeal. The error in the former decree can not be corrected, because an appeal from that decree itself is barred; and the error in the later decree, though the appeal be within two years from its date, can not be corrected, because that would be a reversal of the former decree, and thus nullify the statute defending its error. And, furthermore, no errone-

ous decree prior to such appealable former decree can be reviewed. *Tiernan's Adm'r* v. *Minghini's Adm'r*, 28 W. Va. 314; *Lloyd* v. *Kyle*, 26 W. Va. 534. The only question, then, is whether the decree of March 17, 1888, is appealable. Here we can have no trouble. That decree adjudicated the principles of the cause—its soul and substance—in adjudicating that the deeds of trust were fraudulent and void; setting them aside; setting aside the sale made under one of them to the Douglasses; decreeing debts, and their order against the property; and subjecting it to sale. *Hoy* v. *Hughes*, 27 W. Va. 778; *Buster* v. *Holland, Id.* 510. And it just now occurs to me, as the decree requires land to be sold, it is appealable, under the letter of clause 7, s. 1, c. 135. Indeed, is it not a final decree, according to *Core* v. *Strickler*, 24 W. Va. 689? No matter in what light we may view the decree as to the Douglasses, an appeal, when resorted to to reverse or avoid a decree, is under the limitation. For these reasons, if not for others, we can not look into that decree of March 17, 1888.

We will now look into the decree of 24th February, 1894. The questions of liability for rent, and difference between S. C. Douglass' first and last bids, were not passed on in the former decree, nor did that decree settle principles touching them, or from which the liability imposed by the latter decree legally and logically resulted; and therefore any error in the latter decree imposing liability therefor does not come from the former decree, and we can review the later decree.

Are T. B. and S. C. Douglass liable for rent while they occupied under the sale under the deed of trust?

Stout recorded a notice of *lis pendens* before the sale by the trustees, and they and the beneficiaries under the trust were parties to his suit; and, though the Douglasses were not formal parties, they are as fully bound by the decree as if parties, because *pendente lite* purchasers from the trustees. *Lynch* v. *Andrews*, 25 W. Va. 751. Just as the decree binds the trustees, so it affects the Douglasses. They stand in the shoes of the trustees, and their title perishes with the destruction of their grantor's title. Then would this principle bind them for rents? If the mill company, the debtor, had continued in possession, it could not be charged with

rents pending the suit, because, if a mortgagor or grantor in a trust deed or judgment debtor is in possession pending suit to sell the land, he is not chargeable with rent; and if the creditors are doubtful of the adequacy of their security, and want the benefit of profits until a sale can be had, they must get an order of sequestration, commonly accomplished by appointment of a receiver. *Clarke* v. *Curtis*, 1 Gratt. 289; *Childs* v. *Hurd*, 32 W. Va. 66 (9 S. E. 362); *Bank* v. *Hupp*, 10 Gratt. 23. In the last case, Judge Moncure said he thought this principle more applicable to deeds of trust than to mortgages.

It will be asked, how can the Douglasses be held for rents, if the mill company could not be? If they were purchasers without imputation of fraud, they could not be held for rents, though purchasing pending the suit. 13 Am. & Eng. Enc. Law, 898; *Jacobs* v. *Smith*, 89 Mo. 673 (2 S. W. 13). If claiming free from fraud as alienees of the debtor, they would hold, as he, without liability for rent. A *pendente lite* purchaser has no privity or contract with the creditors. But entirely different is it with one purchasing who is chargeable with fraud, because he is chargeable with fraud. Him equity regards with no favor, reimbursing no expenditures for purchase money or improvements, and charging him with rents of property wrongfully acquired in an effort to hinder, delay, and defraud creditors. His act hindering and delaying them in the pursuit of their debtor's property burdens him with its mesne profits. He is holding property belonging to them, and is made a trustee for them by equity, and can get no benefit from his wrong. Bump, Fraud. Conv. 610, 612; Wait, Fraud. Conv. §§ 26, 27.

Next, can fraud be imputed to the Douglasses? Likely not, as an actual, mental fraud in them; but in law they are chargeable with fraud, because being *pendente lite* purchasers, they are chargeable with everything alleged in the bill. If the facts in the record tell a *pendente lite* purchaser that his vendor committed fraud, he becomes a party to the fraud. *Davis* v. *Christian*, 15 Gratt. 12, point 9. He has notice of facts disclosed by the record. Benn. *Lis Pend.* § 92; *Arnold* v. *Casner*, 22 W. Va. 444, point 7. Turning then to Stout's bill, we find it alleging that the deed of trust

under which the sale to the Douglasses took place was made with intent to hinder, delay, and defraud creditors, and the Douglasses must abide by the decree finding the existence of such intent. In short, the record and the decree make them in law participants in actual fraud in the conveyance. *Arnold* v. *Casner*, 22 W. Va. 444, point 7; *Lynch* v. *Andrews*, 25 W. Va. 751. So the Douglasses, as to Stout's rights, are fraudulent purchasers; but not as to the demands of other creditors who sued, as they filed no notices of *lis pendens*. The Stout suit was for his debt alone, was the first brought. The others were separate suits. They were heard together, and in a joint decree the fact of fraud in the deed of trust was found as to the different debts in the several suits; and, if the sale under the trust deed had been after this decree, we would have the question whether, as a *pendente lite* purchaser is affected with information conveyed by any part of the record, the purchasers at the trust sale would be affected with all information imparted by that decree. But the sale was before that decree, and as a *lis pendens* gives notice only of the facts contained in the record of the suit to which it relates, as it is when the party affected purchases, and only for the purposes of that suit, and for the benefit of parties to that suit, other creditors can not have its benefit in other suits. Opinion in *Newman* v. *Chapman*, 2. Rand. (Va.) 93, and note (14 Am. Dec. 774); Van Fleet, Former Adj. §§ 539, 549; *Stone* v. *Connelly*, 71 Am Dec. 499; *French* v. *Loyal Co.*, 5 Leigh, 627. And, besides this point, the sale of the mill paid the Stout debt and other assailing creditors; and, the scope of the liability imposed by the notice of *lis pendens* being satisfied, there is no ground for calling on the Douglasses to account for rent. They are not proven to have had notice in fact of fraud, but only constructively, by the effect of the notice of *lis pendens*. They are not fraudulent alienees beyond the Stout demands, and hence they fall under the rule stated above— that a mortgagor in possession, or his alience, not guilty of fraud, is not chargeable with rents pending suit; just as the second deed of trust creditor was not held liable in *Bank* v. *Hupp, supra,* though he took with notice of the prior trusts, while here there is no notice. And particularly the bank

can not ask the Douglasses to pay rent to satisfy its debts, as it is a more active agent—the primal author of the fraudulent transaction—and is convicted as such by the decree, and equity will not help one guilty of fraud against another guilty in the same transaction. *Bank* v. *Wilson*, 25 W. Va. 243.

Another reason against holding the Douglasses for rent is that there is no pleading on which to base it. How do we know by the pleadings that they purchased, or were in possession? No pleading mentions it, except a petition filed by them to rehear. The commissioner's report simply mentions it, but that is no pleading. I do not think this petition would make the rent matter a proper subject for relief in connection with the report.

Another question is, can S. C. Douglass be held for the difference between the sum for which the property was knocked off to him at the first sale under the decree, and that at which he purchased at the second sale under the decree? If so, in what mode of proceeding?

Undoubtedly, when one becomes a purchaser at a judicial sale by having the property knocked off to him, he incurs a liability for the price he agreed to pay, though he does not comply with the terms of sale under the decree, as by giving notes with security, or other terms, provided proper steps be taken to enforce this liability. When the purchaser fails to comply with terms, I think the commissioner may ignore his bid, if he thinks it worthless, or for other reason does not care to insist on it, and go on and make another sale at once. But if he does this instead of reporting to the court, it seems he does so at his peril, where there is danger of loss to the parties. *Dills* v. *Jasper*, 33 Ill. 262. If he does this, we think the purchaser is not liable for his bid. But under such circumstances the sale may be reported to the court, and then several courses are open: (1) The court may set aside the sale, release the purchaser, and order a resale. This would be proper where fire or other destruction of the property rendered it proper to release the purchaser. (2) It may confirm the sale, and compel the purchaser to comply with terms of sale by paying money into court, in whole or part, as required by the

prior decree, and conform in other respects to it, and en-
force its order by attachment and commitment after a rule,
because the purchaser is in contempt. This course is rare-
ly resorted to, but is clearly within the court's power. (3)
It may order a resale, with the provision that the purchaser
shall be held responsible in case, upon resale, it shall bring
less than his bid. Opinion, *Clarkson* v. *Read*,· 15 Gratt.
291. See elaborate note to *Mount* v. *Brown*, 69 Am. Dec.
365; 2 Jones, Mortg. § 1642; 12 Am. & Eng. Enc. Law, 234.
Before resale, there ought to be a rule upon the purchaser
to comply with the terms of sale, or show cause why it
shall not be resold, holding him responsible for any dif-
ference between the sum at which he agreed to buy, and
what it may bring on resale. True, he is in default, but
this rule seems to be required by chancery practice. But
why, when one has caused the property to be knocked
down to him, must the court, to hold him responsible, in
some way act on his bid? Because the court is the seller,
the commissioner only its agent. Opinions, *Hyman* v.
*Smith*, 13 W. Va. 765, and *Clarkson* v. *Read*, 15 Gratt. 288.
The bid must be accepted by the court before the bidder
can be held liable. 2 Daniell, Ch. Prac. 1281, speaking of
steps to compel an unwilling purchaser to complete his
purchase, lays it down plainly that the sale must be con-
firmed, as a prerequisite, as well as where the purchaser
claims the property; and, if the purchaser is worthless, an
order to discharge him and resell is proper. I do not think
it usual here to confirm the sale in such a case. Daniell
adds that, according to present practice in England, a more
complete remedy against a purchaser refusing to fulfill his
contract is by an order to resell, providing in it that the
purchaser shall pay expenses arising from the non-comple-
tion of his contract and resale, and also any deficiency in
price arising on the second sale. This I think safe and
proper practice here, if it is desired to hold the purchaser
to his bid. There must be a finished contract, as in other
cases. I agree here with what Chancellor Bland said in a
well considered opinion in *Anderson* v. *Foulke*, 2 Har. & G.
353, where he said there must be a contract and "in no
case is a master or trustee authorized more than to accept

an offer or proposal to contract, which is of no sort of validity until accepted, ratified, and confirmed by the court." Before an order to resell, holding the bidder responsible, there must be a rule upon the purchaser to show cause against it. *Schaefer* v. *O'Brien*, 49 Md. 253, where it was held that there could not be a resale, nor could the bidder be held responsible, until the sale was reported, confirmed, and a rule to resell at the risk of the bidder, with notice to him. Just here I meet with the case of *Hill* v. *Hill*, 58 Ill. 239, holding it indispensable, to hold the bidder bound, to give him a rule to show cause why there should not be a resale at his risk, and that he must be given an opportunity to complete his purchase. So *In Re* Yates, 6 Jones, Eq. 212. So 2 Smith, Ch. Prac. 204. In *Dills* v. *Jasper*, 33 Ill. 263, held; that a bid, though accepted by the master, does not become an absolute contract until approved by the court, as the bidder only agrees to buy if the terms be approved by it, and until the sale is reported and confirmed the sale is incomplete, and the bidder under no obligation to complete the purchase; that if the bid is not reported, or approved by the court, a resale and its confirmation will operate as a rejection of the first bid, and put an end to the liability of the first bidder. (In the present case the decree reserves right to creditors to hold Douglass responsible. Does this save the bid? Is he so far a party as to be bound by that reservation?) The practice in chancery in Illinois is, as a whole, very similar to ours.

Our own cases afford a warrant to say that a bid is but an offer, not a contract, without a recognition in some form by the court. *Kable* v. *Mitchell*, 9 W. Va. 493, in point 6, tells us that "the bid is to be considered as the purchaser's offer to the court, through the commissioners, and in making it he agrees to be bound thereby if it is accepted and approved by the court; and it is discretionary with the court whether it will accept the bid and confirm the sale, or set it aside." Repeated in *Marling* v. *Robrecht*, 13 W. Va. 440.

In this case, before any report of the first sale to the court, the parties, by counsel, agreed that a resale take place without readvertisement; and ten days after the first sale it was again sold to Douglass, but at a lessprice, and

the sale confirmed, with a reservation of the right to creditors to look to him for the discrepancy in price between the two sales. Douglass gave to the commissioners, as his reason for not complying with his first purchase, the act of God in working a damage to the property on the night of the day of sale, by a rise in Valley river, which inundated the property. Now, had this first sale been reported to the court, and notice given Douglass of an intention to hold him to his purchase, he could have shown the facts, and asked the court to release him, and not force upon him a ruined property, or the court might have made an abatement, which I think it had power to do. *Taylor* v. *Cooper*, 10 Leigh, 317, 319, cited in *Hyman* v. *Smith*, 13 W. Va. 767. But without report of this bid, or its acceptance by the court, or intimation of a purpose to hold him to his bid, the property is resold, by mere act of the attorneys of the parties, without advertisement. As all parties consented to a resale, Douglass could fairly infer that they recognized the injustice of confirming the sale, and agreed to disregard it. It is clear that if after sale, and before confirmation, the property is destroyed or injured, the purchaser will not be compelled to comply with his purchase, if without fault, as confirmation relates back to the moment of purchase, and the purchaser is entitled to it in its then condition. *Taylor* v. *Cooper*, 10 Leigh, 317, *Hyman* v. *Smith*, 13 W. Va. 744.

The answer to the rule to compel Douglass to pay his first bid does not set up this defense of a freshet, but makes other defense; and there is no proof of it, unless we construe the report of the commissioners, in stating that as Douglass' reason for not completing his sale, as impliedly admitting it. But we think he is not liable, on grounds stated above.

Here, too, as in defense of the effort to charge the two Douglasses with rent, it is argued that the money for the deficiency on second sale, if charged to S. C. Douglass, would go to the bank, and that it can not ask it, because guilty of fraud, and not entitled to call on equity for help; but this position is untenable, because this matter arises out of the sale under the decree, and the bank debts were

valid, and so adjudged, while the claim for rent is under a possession under the fraudulent deed of trust, and we may, as to that, say the very possession of the purchasers under it was one given by act of the bank.

What is the proper mode of holding a bidder liable when he has failed to complete his purchase, necessitating a re-sale, which has brought a less price? This question has been anticipated in what is said above, as it is there an-swered. It may be by rule in the same case, proceeded in as above indicated.

It seems clear to me that those clauses or provisions of the decree of 24th February, 1894, holding S. C. Douglass and T. B Douglass liable for rent, and holding S. C. Doug-lass liable for difference in the sum for which the property was sold and confirmed to him, and his first bid therefor, are erroneous; and, in so far as the said decree so adjudi-cates, it is reversed.